**CONOCO INC., et al., Plaintiffs,**

v.

**The UNITED STATES FOREIGN–TRADE ZONES BOARD, et al., Defendants.**

Court No. 90–06–00289.

United States Court of International Trade.

April 7, 1992.

Holland & Hart, William F. Demarest, Jr. and Adelia S. Borrasca, Washington, D.C., Lisa L. Bagley, Houston, Tex. (Conoco) and Charles M. Floren, Tulsa, Okl. (Citgo), for plaintiffs Conoco, Inc. and Citgo Petroleum Corp.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty.-in-Charge, Intern.

Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Mark S. Sochaczewsky; Rozann M. Stayden, of counsel, Atty.–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., for defendants.

## OPINION AND ORDER

CARMAN, Judge:

Plaintiffs move for judgment upon the agency record pursuant to Rule 56.1 of the Rules of this Court. Defendants cross-move for judgment upon the agency record and preliminarily seek dismissal upon the grounds that this action fails to meet the prerequisites for subject-matter jurisdiction of this Court.

This action was commenced by Plaintiffs pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), seeking to overturn certain conditions imposed by the Foreign–Trade Zones ("FTZ") Board upon the grants of foreign-trade subzones to Conoco, Inc. and Citgo Petroleum Corporation as discriminatory, unreasonable, arbitrary and capricious, in excess of statutory authority and as an abuse of discretion. Plaintiffs claim that this Court has exclusive jurisdiction over the action pursuant to 28 U.S.C. § 1581(i)(1) and (4) (1988).

## BACKGROUND

This case was originally filed in the United States District Court for the Western District of Louisiana, Lake Charles Division, as an appeal brought pursuant to the APA. On January 25, 1990, the District Court granted the government's Motion for Summary Judgment and dismissed Plaintiffs' suit for lack of subject-matter jurisdiction, without prejudice, and at Plaintiffs' costs. Conoco, Inc. and Lake Charles Harbor and Terminal District v. The United States Foreign–Trade Zone Board, et al, Civil Action No. 89–1717–LC (U.S.D.C.W.D.La., 1990). The District Court determined, after an independent review of the record and a de novo determination of the issues, that the findings of the Magistrate in his Report and Recommendation were correct. The Magistrate

opined that, although 28 U.S.C. § 1581(i) does not create any substantive rights granting exclusive jurisdiction to the Court of International Trade ("CIT"), nevertheless, because the case involved an appeal of an administrative decision directly relating to tariffs on imported goods and the use of revenue in that field, § 1581(i) should be applicable to the case regardless of whether an actual tariff on foreign commerce was presently being imposed.

## STATEMENT OF FACTS

The Lake Charles Harbor and Terminal District submitted in June 1986 an application to the FTZ Board pursuant to the Board's regulations in 15 C.F.R. § 400.304 to designate as a special-purpose subzone the crude oil refinery of Plaintiff Conoco in Calcasieu Parish, Louisiana, adjacent to the Lake Charles port of entry. Another subzone application was filed in December 1987 on behalf of Plaintiff Citgo to designate the crude oil refinery facilities of Citgo at Lake Charles, Louisiana, as a special-purpose subzone. In response to the two applications, the FTZ Board issued two separate orders granting the special-purpose subzone status requested and imposed substantially identical conditions relating to the establishment of the two respective subzones. The conditions set forth in the separate Conoco and Citgo orders are as follows:

(1) Foreign crude oil used as fuel for the refinery shall be dutiable.

(2) [Conoco and Citgo, as the case may be] shall elect privileged foreign status on foreign crude oil and other foreign merchandise admitted to the subzone.

(3) The U.S. Customs Service shall inform the Foreign–Trade Zones Board on or before July 1, 1991, that a satisfactory control system has been implemented so that the revenue can be fully protected; otherwise the authority under this grant shall expire on that date.

*Resolution and Order Approving the Application of the Lake Charles Harbor and Terminal District for a Subzone at the Conoco, Inc., Refinery in Calcasieu Par-*

*ish, LA,* 53 Fed.Reg. 52,455 (1988); *Resolution and Order Approving the Application of the Lake Charles Harbor and Terminal District for a Subzone at the Citgo Petroleum Corp. Refinery in Calcasieu Parish, LA,* 54 Fed.Reg. 27,660 (1989).[1]

Presumably one result of the conditions placed upon the Plaintiffs is that they impose a duty upon crude oil used as refinery fuel by Plaintiffs in the subzone duty under the tariff schedules of the United States. Imposition of these conditions, which the FTZ Board has apparently applied to all new refinery subzone grants after 1985, marked a departure from prior Board practice. Between 1970 and 1985, the FTZ Board approved five applications for oil refining subzones without the conditions attached to Plaintiffs' grants (or other post–1985 grants). *See* Affidavit of John J. DaPonte, Jr., Executive Secretary of the Foreign–Trade Zones Board (Dec. 4, 1989) ("DaPonte Aff.").[2]

## CONTENTIONS OF THE PARTIES

■ Plaintiffs ask this Court to strike down the imposed conditions as unlawful and seek a declaratory judgment that the conditions are unenforceable. Plaintiffs argue that because the APA as a general matter creates a cause of action against the United States and the instant action arises out of administration or enforcement of the international trade laws of the United States, this Court has exclusive jurisdiction over the case under § 1581(i).[3]

The Court gleans from Plaintiffs' papers, as well as its representations made at oral argument, that they assert jurisdiction under paragraphs (1) and (4) of subsection 1581(i). According to Plaintiffs, the FTZ Board's actions arise out of the Foreign–Trade Zones Act ("FTZA"), 19 U.S.C. §§ 81a–u (1988), the provisions of which "fall literally within the provisions of section 1581(i) requiring exclusive jurisdiction in this Court over civil actions arising 'out of any law of the United States providing for ... administration and enforcement with respect to' revenue from imports or tonnage." Plaintiffs' Supplemental Memorandum on Jurisdiction at 18 n. 5.

Even while acknowledging that the case "may involve matters related to the areas within the jurisdiction of the Court," the Defendants maintain that the actions of the FTZ Board at issue in this case are not reviewable in this Court because they do not meet the prerequisites for subject-matter jurisdiction. Defendants' Supplemental Memorandum on Jurisdiction at 6. Defendants argue that the FTZA is not a law providing for the raising of revenue and/or the administration and enforcement thereof within the meaning of paragraphs (1) and (4) of subsection 1581(i).

Further, Defendants maintain that no provision of the FTZA makes Board determinations to either grant foreign-trade zones or attach conditions to such grants subject to judicial review. Instead, the FTZA provides for judicial review only in cases involving the revocation of foreign-trade zone grants under 19 U.S.C. § 81r(c).

## DISCUSSION

This Court must determine whether it has subject-matter jurisdiction pursuant to 28 U.S.C. § 1581(i) to review the actions of the FTZ Board in granting a subzone application subject to certain conditions, one of which makes dutiable foreign crude oil used and consumed as fuel for the refinery

---

**1.** By order dated March 27, 1991, the FTZ Board revoked condition three (3) on all subzone grant permits and notified all oil companies affected by this change.

**2.** Apparently the first oil refinery subzone was granted in 1970 for the Hawaiian Independent Refinery. *See Hawaiian Indep. Refinery v. United States,* 81 Cust.Ct.Rpts. 117, 119, 460 F.Supp. 1249, 1252 (1978). In 1982 the Board approved an application for an oil refining subzone for Commonwealth Oil Refinery Corporation in Penuelas, Puerto Rico. In 1985, the Board approved three more oil refining subzone applications for Coastal Refining Corporation, Southeast Refining Corporation, and Tri-finery, Corporation in Corpus Christi, Texas. DaPonte Aff.

**3.** The APA does not independently confer subject-matter jurisdiction on federal courts to hear challenges to agency actions. *See Califano v. Sanders,* 430 U.S. 99, 104–07, 97 S.Ct. 980, 983–85, 51 L.Ed.2d 192 (1977); *American Air Parcel Forwarding Co. v. United States,* 718 F.2d 1546, 1552 (Fed.Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984).

within the subzone, even though at the time the action was filed no assessment or liquidation of duties had occurred and no protest had been filed.[4]

■ For the reasons that follow, this Court concludes that Plaintiffs' reliance upon the Court's residual jurisdiction under 28 U.S.C. § 1581(i) must fail because Plaintiffs have not shown why they should not be required to follow the usual jurisdictional path of waiting for an assessment or liquidation of goods and the filing of a protest challenging the legality of Customs' action in accordance with the prerequisites of 28 U.S.C. § 1581(a), or why such a procedure would be manifestly inadequate. See 19 U.S.C. § 1514(a) (1988). Consequently, Plaintiffs' action is dismissed as jurisdictionally premature, and therefore this Court does not reach the merits of the case.

■ The Court's jurisdictional mandate, as supported by its legislative history and binding case authority, demonstrates that a litigant will not be permitted to maintain a § 1581(i) action when its action may be brought under another subsection of § 1581, presently or at a future date, in accordance with the administrative prerequisites of those subsections. See 28 U.S.C. § 1581(a)–(h).

This Court derives its jurisdiction from 28 U.S.C. § 1581. Section 1581 was added to the Customs Court Act of 1980, Pub.L. No. 96–417, 94 Stat. 1727 (1980), and delineates specific instances when suit may be brought in the Court. In enacting section 1581, Congress intended to clarify jurisdictional disputes that had previously arisen between the CIT and the district courts, indicating "that the expertise and national jurisdiction of the [CIT] ... be exclusively utilized in the resolution of conflicts and disputes arising out of the tariff and international trade laws...." H.R.Rep. No. 1235, 96th Cong., 2d Sess., at 27–28 ("House Report"), reprinted in, 1980 U.S.C.C.A.N. 3729, 3739.

Congress' solution for resolving these jurisdictional disputes was subsection (i) of section 1581. It provides as follows:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 or by a binational panel under article 1904 of the United States–Canada Free–Trade Agreement and section 516A(g) of the Tariff Act of 1930.[5]

Customs Court Act of 1980, Pub.L. No. 96–417, 94 Stat. 1728, as amended, 28 U.S.C.

---

4. In its supplemental brief filed in response to this Court's Order of February 7, 1992, subsequent to oral argument in the case, the government revealed that Plaintiff Citgo has now used its subzone and has paid duties assessed on fuel consumed in its subzone, while Plaintiff Conoco has not activated its subzone and therefore has not paid duties on fuel consumed in the subzone. At the time of this opinion, no protests have been filed on behalf of Citgo. These matters are discussed later in this opinion.

5. It would seem in adding this last paragraph to subsection (i) in 1988, Congress thought it necessary to specifically exclude those matters from the subject-matter jurisdiction of the Court because of the otherwise broad and sweeping language of § 1581(i). Subsection 1581(j), dealing with the prohibition of importation of immoral articles, provides another example of Congress' effort to restrict the broad scope of § 1581.

§ 1581(i) (1988). According to Congress, § 1581(i) is a "broad jurisdictional grant" designed to erase the jurisdictional conflicts existing between the CIT and the district courts. House Report at 47, 1980 U.S.C.C.A.N. at 3759. The rationale behind § 1581(i) is explained in the House Report:

Subsection (i) of the proposed section 1581 is a residual grant of jurisdictional authority. This provision expands the exclusive jurisdiction of the Court of International Trade to include those civil actions 'against the United States, its agencies, or its officers, that arise out of any law of the United States providing for ... [those matters found in paragraphs (1)–(4) of subsection (i)].'

Subsection (i) is intended only to confer subject matter jurisdiction upon the court, and not to create any new causes of action not founded on other provisions of law.

The purpose of this broad jurisdictional grant is to eliminate the confusion which currently exists as to the demarcation between the jurisdiction of the district courts and the Court of International Trade. This provision makes it clear that all suits of the type specified are properly commenced only in the Court of International Trade. The Committee has included this provision in the legislation to eliminate much of the difficulty experienced by international trade litigants who in the past commenced suits in the district courts only to have those suits dismissed for want of subject matter jurisdiction. The grant of jurisdiction in subsection (i) will ensure that these suits will be heard on their merits.

*Id.* at 47, 1980 U.S.C.C.A.N. at 3758–59.

Subsection 1581(i) as enacted appears to confer in unambiguous terms a broad resid-

ual jurisdictional grant to the CIT. Courts curiously have looked, nevertheless, in construing what appears to be the unambiguous language in the statute, to the legislative history of the law to see what Congress had in mind.

Unfortunately, it is the legislative history that is ambiguous. While purporting to proclaim a broad jurisdictional grant to eliminate jurisdictional confusion between the district courts and the Court of International Trade, asserting § 1581(i) would ensure that international trade disputes would be heard on the merits, the legislative history simultaneously purports to restrict subsection (i), stating that it does not create any new causes of action not founded on *other* provisions of law.

As many litigants have discovered, the "other" law mentioned above is not just any law touching upon international trade, but must be of the kind described in paragraphs (1)–(4) of subsection (i). *See K Mart Corp. v. Cartier, Inc.,* 485 U.S. 176, 188, 108 S.Ct. 950, 958, 99 L.Ed.2d 151 (1988) ("Congress did not commit to the [CIT's] exclusive jurisdiction *every* suit against the Government challenging custom-related laws and regulations."). The *K Mart* decision, discussed below, provides a good example of why Congress' intention that international trade litigants be able to accurately predict whether the CIT or the district courts have subject-matter jurisdiction over their cases has not been fully realized.

While this Court has, on several occasions, viewed the jurisdictional grant under § 1581(i) broadly,[6] the Court of Appeals for the Federal Circuit and the Supreme Court have construed the jurisdictional grant un-

---

**6.** *See, e.g., Di Jub Leasing Corp. v. United States,* 1 CIT 42, 505 F.Supp. 1113 (1980) (review of a customshouse cartman's license revocation held to be intertwined and directly related to the administration and enforcement of law providing for revenue from imports under paragraphs (1) and (4) of subsection 1581(i)); *National Bonded Warehouse, Ass'n v. United States,* 13 CIT 78, 706 F.Supp. 904 (1989) (jurisdiction found under paragraph (4) of subsection 1581(i) over a challenge to annual bonded warehouse

fees); *Sharp Electronics Corp. v. United States,* 13 CIT 732, 720 F.Supp. 1014 (1989) (subsection 1581(i) jurisdiction found to encompass administration of a settlement agreement in antidumping action); and *National Customs Brokers & Forwarders Ass'n v. United States,* 13 CIT 803, 723 F.Supp. 1511 (1989) and 14 CIT ——, 731 F.Supp. 1076 (1990) (subsection 1581(i) jurisdiction found over action seeking to compel issuance of regulations over courier services permitted to enter certain merchandise).

der § 1581(i) rather narrowly. Those court decisions, discussed below, take the restrictive view requiring a litigant to first pursue, if at all possible, those jurisdictional avenues which are specifically delineated in subsections 1581(a)–(h). The law is clear that "[w]here another remedy [under § 1581(a)–(h) ] *is or could have been* available, the party asserting § 1581(i) jurisdiction has the burden to show how that remedy would be manifestly inadequate." *Miller & Co. v. United States,* 5 Fed.Cir. (T) 122, 124, 824 F.2d 961, 963 (1987), *cert. denied,* 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988) (emphasis added).[7]

Case law has also determined that Congress created § 1581(i) to cover actions not delineated in subsections (a)–(h) when those actions *arise out of* United States laws providing for those more general matters outlined in paragraphs (1)–(4) of the subsection. The Federal Circuit has, however, warned that a litigant "will not be allowed to sail past carefully constructed limitations by simply invoking other and more general legislation." *National Corn Growers Ass'n v. Baker,* 840 F.2d 1547, 1558 (Fed.Cir.1988).

The existing case law is clear that when a plaintiff can use jurisdiction under 28 U.S.C. § 1581(a) or any of the other specifically delineated avenues of jurisdiction set forth in subsections (a)–(h) of § 1581, plaintiff must proceed under those subsections and comply with all of the relevant prerequisites of each. *Uniroyal,* 69 CCPA at 179, 687 F.2d at 467; *American Air Parcel,* 718 F.2d at 1546; *National Corn Growers,* 840 F.2d at 1547.

*Uniroyal* was a case involving the importation by Uniroyal of shoe parts without the required country-of-origin mark. Although the plaintiff received six formal notices from Customs to the effect that the merchandise was found illegally marked,

Uniroyal did not protest those notices but instead filed a request for internal advice from Customs pursuant to 19 C.F.R. § 177.11, urging that the merchandise need not be so marked on account of a certain exception to the general rule. Customs rejected this argument. Uniroyal then brought an action in the CIT, seeking declaratory and injunctive relief under 28 U.S.C. § 1581(i) because Customs allegedly erred in its ruling concerning the request for internal advice. While acknowledging that the notices were protestable, the CIT nevertheless denied the government's motion to dismiss holding that § 1581(i) did not, as § 1581(a), require the filing and denial of a protest as a prerequisite for CIT jurisdiction.[8] After reconsideration, the case reached the Court of Appeals on an interlocutory appeal of the jurisdictional issue.

The Court of Appeals found that "the legislative history of § 1581(i) ... evidences Congress' intention that subsection (i) not be used generally to bypass administrative review by meaningful protest." *Uniroyal,* 69 CCPA at 183–84, 687 F.2d at 472. The CIT lacked jurisdiction to hear Uniroyal's challenge because Uniroyal could have filed a protest under § 1581(a) to contest the anticipated assessments arising from the six completed entries when and if such assessments had been made. *Id.* Moreover, the court stated that:

> [T]o the extent that Uniroyal's prayer for relief is directed to future importations of uppers and soles, Uniroyal has not demonstrated the 'irreparable harm' Congress has required before the trial court can exercise jurisdiction over an appeal of a ruling prior to the importation of goods and the filing and denial of a protest.

*Uniroyal,* 69 CCPA at 184, 687 F.2d at 472; *see* 28 U.S.C. § 1581(h). Uniroyal was not permitted to circumvent the prerequisites

---

**7.** The "manifestly inadequate" element is a judicially required prerequisite. *See, e.g., United States Cane Sugar Refiners' Ass'n v. Block,* 69 CCPA 172, 175 n. 5, 683 F.2d 399, 402 n. 5 (1982) ("*Cane Sugar Refiners II*"), *aff'g,* 3 CIT 196, 544 F.Supp. 883 (1982) ("*Cane Sugar Refiners I*"); *United States v. Uniroyal, Inc.,* 69 CCPA 179, 187, 687 F.2d 467, 475 (1982) (Nies, J., concur-

ring). It appears nowhere in the statutory terminology or in the legislative history.

**8.** The CIT also found that the filing of a protest in that case was "purposeless" in light of Customs' negative internal advisory ruling. *Uniroyal,* 69 CCPA at 181, 687 F.2d at 469.

of § 1581(a) by trying to invoke jurisdiction under § 1581(i).

Likewise, in *National Corn Growers* it was held that the filing and denial of a protest was a prerequisite to commencing an action challenging a Customs determination and reliance upon § 1581(i) to justify subject-matter jurisdiction was insufficient in that case. The Court stated:

[A]ppellees chose to ignore the precepts of subsection 1581 and attempted to circumvent the congressionally mandated process by immediately filing suit.... [S]uch circumvention is expressly prohibited. [citations omitted]. The jurisdictional statute is set up to reflect existing law and not to expand the Court of International Trade jurisdiction to the point of creating new causes of action not founded on other provisions of existing law. House Report No. 1235, 96th Cong., 2d Sess., at 47, *reprinted in* 1980 U.S.Code Cong. & Admin.News, 3729, 3758.

*National Corn Growers*, 840 F.2d at 1556. The Federal Circuit found that § 1581(i) did not provide jurisdiction for the CIT to review the action brought by the domestic manufacturers because the action was covered by the protest procedure of § 1581(b). The domestics sought § 1581(i) jurisdiction because a § 1581(b) protest offered only prospective relief. The court also disagreed with the CIT's finding that the protest remedies under 19 U.S.C. § 1516 (request for classification) would have been "manifestly inadequate."

In *American Air Parcel*, 718 F.2d at 1560, the court held that 28 U.S.C. § 1581(i) did not grant litigants jurisdiction in the CIT where the litigants failed to exhaust the avenue of protest and denial before the Customs Service and the payment of liquidated duties.

While the Supreme Court has recognized that a district court would be divested of jurisdiction if the action fell within one of the several specific grants of the CIT's exclusive jurisdiction, including those matters properly covered by § 1581(i), the Supreme Court in *K Mart* strictly interpreted

the provisions of § 1581(i). It held that 28 U.S.C. § 1581(i)(3) (the provision concerning "embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety") did not grant the CIT exclusive jurisdiction over actions arising under 19 U.S.C. § 1526, which prohibits imported "gray-market" goods that are foreign-manufactured and have a valid United States trademark without the consent of the United States trademark owner. The Supreme Court scrutinized the meaning of the word "embargo" in § 1581(i)(3) and held that Congress intended § 1581(i)(3) to cover only those embargoes which are governmentally imposed quantitative restrictions of zero on the importation of merchandise. *K Mart*, 485 U.S. at 185, 108 S.Ct. at 957. The Court concluded that 19 U.S.C. § 1526 was not an embargo within the meaning of § 1581(i)(3) because it merely provided a mechanism for a private party to obtain, at its own option, government help in restricting the quantity of imports. *Id.*

In the instant case, Plaintiffs are, *inter alia*, challenging the FTZ Board's condition which makes dutiable all crude oil used as fuel in the refining process. Plaintiffs are attempting to circumvent the statutory scheme by seeking relief in the nature of a declaratory judgment against the actions taken by the FTZ Board by invoking § 1581(i) even though it would appear they could have awaited assessments and liquidations and contested the denial of a protest in whole or in part by Customs for any entries affected by the Board's conditions. The case law is clear that litigants will not be permitted to easily circumvent protest procedures that are specifically available under subsections 1581(a)–(h) unless the underlying relief available under those subsections is manifestly inadequate.[9] Because Plaintiffs have failed to show the underlying relief is manifestly inadequate, the action must be dismissed by the Court for lack of jurisdiction.

**9.** *But see* note 6, *supra*, and note 14, *infra.*

Plaintiffs' belief that this case is jurisdictionally akin to this Court's decisions in *Hawaiian Indep. Refinery, supra,* and *Nissan Motor Mfg. Corp., U.S.A. v. United States,* 12 CIT 737, 693 F.Supp. 1183 (1988), which reviewed the dutiable status of goods in a foreign trade subzone, is misplaced. Those cases are distinguishable on the facts relevant to the jurisdiction question before the Court. In both cases, the alleged harm resulted from specific, protestable actions of the Customs Service. In *Nissan* the case was reviewed by this Court following a protest and denial of a protest after the merchandise was actually assessed and liquidated. *Nissan,* 12 CIT at 737, 693 F.Supp. at 1184.[10] In *Hawaiian Indep. Refinery* the Court reviewed a protest after Customs actually required the filing of periodic consumption entries. *Hawaiian Indep. Refinery,* 81 Cust.Ct.Rpts. at 119, 460 F.Supp. at 1252. In both actions, the litigants challenged an action of the Customs Service, not the FTZ Board, and followed normal statutory protest procedures under the law providing for challenges to actions by Customs.

At the time this action was filed, there was no evidence in the record that an assessment or liquidation of any merchandise had been undertaken by the Customs Service. Had either of those events occurred, it would appear that Plaintiffs' could have eventually brought a challenge in this Court under 28 U.S.C. § 1581(a).[11]

By Order dated February 7, 1992, this Court directed the parties to address specifically, through briefing and other materials including affidavits, the question of whether 28 U.S.C. § 1581(a) should be considered as the proper jurisdictional basis for Plaintiffs' cause of action or whether § 1581(a) is manifestly inadequate. Pursuant to the Order, both parties submitted briefs.

In their supplemental briefs, Plaintiffs argued that filing a protest before the Customs Service under § 1581(a) would be "inappropriate" because the challenged actions of the FTZ Board are not cognizable in a protest proceeding before Customs; Plaintiffs therefore did not address the question of whether § 1581(a) would be manifestly inadequate. Plaintiffs urge that any such protest would necessarily

**10.** It is interesting to note that in *Nissan,* a § 1581(a) case, the CIT examined Nissan's subzone application and the Board's grant of authority and found that the Board *did not* condition the grant of Nissan's subzone on any implied promises to pay duties on the production equipment used to produce merchandise in the subzone. However, the Court did not address the FTZ Board's *authority* to condition the granting of a subzone on the payment of duties on production equipment. The Court also pointed out that the Board's grant did not interfere with Nissan's right to challenge Custom's entry requirements by filing a protest against liquidation and bringing an action in the CIT to challenge the denial of the protest. *Nissan,* 12 CIT at 743–44, 693 F.Supp. at 1188–89.

**11.** 28 U.S.C. § 1581(a) (1988) provides that "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." Section 515 of the Tariff Act, as amended by 19 U.S.C. § 1515 (1988), provides for the review of protests by *Customs* and the rights of the protesting party to file a civil action contesting the denial of the protest under 19 U.S.C. § 1514.

Section 1514(a) provides in pertinent part that:

Except as provided [at certain sections of this title], decisions of the appropriate customs officer, *including the legality of all orders and findings entering into the same,* as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or any modification thereof;

(6) the refusal to pay a claim for drawback; and

(7) the refusal to reliquidate an entry under section 1520(c) of this title,

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade....

19 U.S.C. § 1514(a) (1988) (emphasis added).

involve an impermissible collateral attack on a final agency action of the FTZ Board.

Instead, Plaintiffs argue in their supplemental briefs that two analogous cases, *Cane Sugar Refiners II*, 69 CCPA at 175 n. 5, 683 F.2d at 402 n. 5, and *Luggage & Leather Goods Mfrs., Inc. v. United States*, 7 CIT 258, 265–66, 588 F.Supp. 1413, 1420 (1984), support its position that this Court should take jurisdiction in this case under § 1581(i). In *Cane Sugar Refiners I*, the plaintiff, an association of sugar refiners, challenged a Presidential Proclamation imposing import quotas on sugar and sought to invoke this Court's jurisdiction under § 1581(i), arguing that it was inappropriate for the Court to require the plaintiff to proceed under § 1581(a). *Cane Sugar Refiners I*, 3 CIT at 200, 544 F.Supp. at 886. The CIT took jurisdiction, observing that:

> The Customs officials, who would review a protest claiming that [Presidential Proclamation] 4941 is invalid, obviously have no authority to override the presidential proclamation and admit over-quota sugar.... [T]here is no relief which plaintiff may be granted at the administrative level. Under these circumstances, requiring the exhaustion of administrative remedies would be inequitable and ... futile.

*Cane Sugar Refiners I*, 3 CIT at 201, 544 F.Supp. at 887. In *Cane Sugar Refiners II*, the appellate court affirmed, holding that relief under § 1581(a) was "manifestly inadequate" and that jurisdiction was properly invoked under § 1581(i). *Cane Sugar Refiners II*, 69 CCPA at 175 n. 5, 683 F.2d at 402 n. 5.

This Court's decision in *Luggage & Leather Goods* concerned a dispute respecting the President's construction of a statutory provision under the Generalized System of Preferences ("GSP"). The President designated by Executive Order that certain goods be granted duty-free GSP treatment. The plaintiffs challenged the legality of the presidential action. Relying on *Cane Sugar Refiners II*, this Court took jurisdiction under § 1581(i), noting that to require Plaintiffs to proceed under § 1581(a) would be futile and inappropriate because no administrative agency was authorized to review the President's Executive Order. *Luggage & Leather Goods*, 7 CIT at 265–66, 588 F.Supp. at 1420; *see Sybron Corp. v. Carter*, 438 F.Supp. 863, 864 (W.D.N.Y.1977).

Plaintiffs urge that just as no Customs officer or administrative agency has the statutory authority to review the validity of a Presidential determination, similarly only the FTZ Board is authorized to grant foreign trade subzone status, and no Customs official or other administrative agency is authorized to review the FTZ Board's determination. According to Plaintiffs, this function of review is entrusted uniquely to the judiciary and is not delegated to administrative agencies.

While it is clear that absent a delegation of authority one agency does not have the authority to review the actions of another agency, this Court similarly cannot exercise the power of judicial review without proper authority. While Plaintiffs' arguments may hold some sway, this Court declines to equate the actions of the FTZ Board with those concerning Presidential Proclamations and Executive Orders; it is not inconceivable that Customs might examine the underlying basis for its own decision to assess and liquidate duties under its implied powers to properly carry out its agency mandate in the context of this case. This Court notes that pursuant to 19 U.S.C. § 1514(a) Customs would appear obligated during a protest proceeding to examine "the legality of all orders and findings" upon which they base their decisions to assess, classify, and liquidate imported merchandise.

The government points out in its supplemental briefs that Plaintiff Citgo has now used its subzone and paid duties on fuel consumed in the subzone; Plaintiff Conoco, on the other hand, has not used its subzone and therefore has not paid any duties on consumed fuel. Plaintiffs do not refute these representations. The government argues that these developments further support its position that this Court has no

jurisdiction pursuant to § 1581(i). *See Uniroyal,* 69 CCPA at 179, 687 F.2d at 467.

After carefully considering the arguments of the parties, the Court holds that because Plaintiffs' have not articulated any persuasive reason why waiting to bring an action under § 1581(a) would be a manifestly inadequate remedy or that there is some threat of immediate injury or irreparable harm to an industry, jurisdiction under § 1581(i) is unavailable. *See Cane Sugar Refiners II,* 69 CCPA at 175 n. 5, 683 F.2d at 402 n. 5.

■ Merely because a court perceives what it believes might be a wrong does not give the court the power to right the perceived wrong. This Court is powerless to act where its jurisdiction has not been properly invoked. Our appellate court has held, and we are bound to follow the rule, that subsection (i) cannot generally be used to bypass administrative review where there is an opportunity for meaningful protest. *Uniroyal,* 69 CCPA at 179, 687 F.2d at 472. It would appear Plaintiffs could file a protest under 28 U.S.C. § 1581(a) to contest assessments should they occur.[12] As noted, where another remedy under subsections 1581(a)–(h) is or could have been available, the party asserting § 1581(i) jurisdiction must meet its burden of showing why those remedies are manifestly inadequate. *Miller,* 5 Fed.Cir. (T) at 124, 824 F.2d at 963. In the instant case, there is no proof submitted by Plaintiffs that they would suffer irreparable harm that might justify the Court in finding that the remedies provided under the exclusive jurisdictional provisions set forth in subsections (a)–(h) (and in this case presumably subsection (a)) are manifestly inadequate. *See Cane Sugar Refiners II,* 69 CCPA at 175 n. 5, 683 F.2d at 402 n. 5.[13]

This Court is not persuaded that requiring the exhaustion of administrative remedies in this case through protest is inappropriate and, therefore, should not preclude jurisdiction under § 1581(a). Furthermore, this Court reiterates that Plaintiffs have failed to meet the "manifestly inadequate" burden to justify the circumvention of 28 U.S.C. § 1581(a)–(h) by invoking jurisdiction under subsection 1581(i), as discussed elsewhere in this opinion.[14]

This Court feels compelled to express its sense of exasperation and frustration with the results of this case. Individuals and firms are often required to expend an inordinate amount of time and money to obtain judicial review in this Court. They are required to navigate arcane jurisdictional passages. They waste time and resources

---

**12.** In the case of Plaintiff Citgo, such assessments and liquidations have apparently already occurred.

**13.** 28 U.S.C. § 1581(h) (1988) (emphasis added) provides, in part, as follows:

> "The Court of International Trade [has] exclusive jurisdiction of any civil action commenced to review, *prior to importation* of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation rate of duty ... but only if the party commencing the civil action demonstrates to the court that he would be *irreparably* harmed unless given an opportunity to obtain judicial review prior to such importation."

Presumably, this subsection would not be available to Plaintiffs because the requirement that the crude oil used as fuel be dutiable has come from the FTZ Board and not the Secretary of the Treasury.

**14.** Plaintiffs cite *Nakajima All Co. v. United States,* 12 CIT 189, 682 F.Supp. 52 (1988) as

authority for this Court to permit the circumvention of subsections (a)–(h) and to invoke jurisdiction under subsection (i). In *Nakajima,* the Court invoked jurisdiction under subsection (i) in a mandamus proceeding which sought to compel Commerce to complete and publish certain administrative reviews that were specifically enjoined by law. According to Plaintiffs, *Nakajima* stands for the proposition that administrative decisions that are "outside the scope" of any administrative proceedings under subsections (a) through (h) were the type of actions to which Congress intended subsection (i) to apply. *See* 12 CIT at 194, 682 F.Supp. at 57 (citation omitted). The circumstances underlying the cause of action in *Nakajima* were such that the prerequisites of subsections (a) through (h) were not attainable, but the action was nevertheless reviewable under subsection (i). *Id.* In the instant case, however, Plaintiffs have not carried their burden of showing that § 1581(a) is not or could not become available within the meaning of *Miller, supra,* nor have they demonstrated that the actions of the FTZ Board affecting dutiability are outside the scope of a § 1581(a) protest. *See* 19 U.S.C. § 1514(a).

fighting over jurisdiction and oftentimes they are denied a chance to be heard on the merits of the case. These obstacles unnecessarily increase cost and hurt the efforts of the United States to be competitive in the international community. The restrictive statutory scheme of § 1581(a)–(h) and its relationship to § 1581(i) should be re-examined.

The proceedings underlying the instant cause of action are a case in point. In the district court, the government argued the district court did not have jurisdiction and that exclusive jurisdiction was in the CIT. The district court dismissed the case. Plaintiffs subsequently brought the suit in the CIT. Here, the government argues that *neither* the CIT nor any court has subject-matter jurisdiction.[15] It is small wonder that the public does not understand such a system.

Similarly, litigants forced to contest whether a suit should be brought in the district court or the CIT often never reach the merits. These jurisdictional problems antedate the Customs Courts Act of 1980. *See* House Report at 18, 1980 U.S.C.C.A.N. 3729. Many lawsuits pertaining to international trade issues were commenced in the district court instead of the United States Customs Court because it was difficult to determine in advance whether a particular case fell within the jurisdictional scope of the Customs Court and because the powers of the Customs Court were limited. *Id.* at 19, 1980 U.S.C.C.A.N. 3730–31.

Most district courts refused to entertain such suits, citing the United States constitutional mandate requiring that duties be uniform throughout the United States, thus endeavoring to preserve the Congressional grant of exclusive jurisdiction to the United States Customs Court for judicial review of all matters relating to imports. *Id.* The result was inconsistent judicial decisions, with litigants proceeding with caution when choosing a forum for judicial review. *Id.* Some individuals obtained relief while others who, by chance, selected the wrong

forum, were denied relief. *Id.* With the growth of international trade suits in the federal district courts, dismissals for lack of jurisdiction increased. *Id.* The instant case is another example of this kind of jurisdictional ping-pong that continues to subsist. It must be brought under control.

One commentator has opined that the lack of a meaningful statutory jurisdictional route, coupled with overly narrow jurisdictional interpretations as to the jurisdiction of the Court of International Trade, has left America with a court that is approaching the 21st century with 19th century jurisdiction.[16] One need not totally agree with that opinion to recognize the wisdom of Justice Scalia's objection to the *K Mart* majority's narrow interpretation of 28 U.S.C. § 1581(i):

"[T]he jurisdictional question, if decided incorrectly, may generate uncertainty and hence litigation into the indefinite future.... [T]he Court's resolution of this question strains the plain language of the statute, and blurs a clear jurisdictional line that Congress has established."

*K Mart*, 485 U.S. at 192, 108 S.Ct. at 960 (Scalia, J., dissenting).

Congress needs to re-examine how to implement the broad jurisdictional mandate it sought to confer upon the Court of International Trade with the enactment of § 1581(i) to ensure compliance with the constitutional mandate requiring uniformity of duties throughout the United States.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for judgment upon the agency record is denied for lack of jurisdiction; Defendants' motion to dismiss is granted. The action is dismissed.

**15.** *But see* 28 U.S.C. § 1581(a).

**16.** Andrew P. Vance, *The Unrealized Jurisdiction of 28 U.S.C. § 1581(i): A View from the Plain-tiff's Bar*, 58 St. John's L.Rev. 793, 800–01 (1984).