PHIBRO ENERGY, INC.,
et al., Plaintiffs,

v.

Barbara H. FRANKLIN,
et al., Defendants.

Court No. 92–06–00394.

United States Court of
International Trade.

May 21, 1993.

Williams & Connolly (John G. Kester and David D. Aufhauser), for plaintiffs.

Stuart E. Schiffer, Asst. Atty. Gen. of the U.S., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (Mark S. Sochaczewsky); Robert J. Heilfertz, Atty.–Advisor, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, for defendants U.S., et al.

Bracewell & Patterson (Scott H. Segal and Gene E. Godley) and S. Lee Wingate (Counsel to the City of Texas City), of counsel, for Amici Curiae, the City of Texas City, the Texas City Independent School Dist., the County of Galveston, and the College of the Mainland.

## OPINION AND JUDGMENT

CARMAN, Judge:

Plaintiffs move for judgment on the agency record pursuant to USCIT R. 56.1. In their motion plaintiffs seek judicial review of an order of the United States Foreign–Trade Zones Board denying as not in the public interest an application filed by the Port of Houston Authority for special purpose subzone status for plaintiffs' petroleum refinery in Texas City, Texas. U.S. Foreign–Trade Zones Board Order No. 552, 56 Fed. Reg. 67,058 (1991). Plaintiffs base jurisdiction upon 28 U.S.C. § 1581(i) (1988). Defendants oppose the motion.

### I. BACKGROUND

The Port of Houston Authority submitted to the United States Foreign–Trade Zones Board (FTZ or Board) in December 1989, on behalf of Hill Petroleum (now plaintiff Phibro), an application for special-purpose subzone status under Foreign–Trade Zone No. 84 for two petroleum refinery sites in Houston and Texas City, Texas. The FTZ Board approved the application for plaintiffs' refinery in Houston, but disapproved the application for plaintiffs' refinery in Texas City. FTZ Board Order No. 552, 56 Fed.Reg. 67,058 (1991).

The application filed on plaintiffs' behalf stated that Houston, Texas City and the

State of Texas would benefit greatly if the two subzones were approved. The application further explained that if subzone status were granted, it would enable plaintiffs to retain and expand a $30 million per-year payroll in both cities; maintain and expand a total economic export of over $2 billion per-year in the State of Texas; increase exports from 6.3 million barrels of petroleum products to over 12 million barrels of petroleum, valued at $440 million per year; reduce the United States' balance of trade by increased exports; and preserve two United States refining operations, thereby saving 4,488 direct or indirect jobs and stimulating growth in the United States refinery industry with approximately $36 million in capital improvements at its two refineries.

The application received initial favorable public comment from numerous organizations, companies and government officials. R. 3–9, 11–12. Subsequently, an Examiners Committee consisting of representatives of each of the Board members reviewed the application and public comments, and two members of the Committee, in the summer of 1990, recommended approval. R. 110. In March 1991, the Board learned that Texas City, Galveston County, and Texas City Independent School District, three local taxing authorities, had not received any notice of hearings or of the application. All three requested an opportunity to be heard in opposition to the application. R. 21.

At the time the Board received the taxing authorities' request, the Board still considered the review as ongoing. Due to the lack of input from the taxing authorities the Board decided to hear the views of the community and include them in the administrative record. R. 66. The Board later received numerous expressions of opposition to the application from community officials. These objections were based upon the projected loss of *ad valorem* tax revenues. In 1989, the Texas City refinery paid $606,739

in *ad valorem* taxes to the three local taxing authorities. This figure apparently amounted to less than one percent of the total tax revenues. The County appraiser noted that "[i]f Foreign–Trade status becomes commonplace in our area the taxable wealth which the new school funding system is supposed to spread around, will not materialize to a significant degree." R. 83.

On December 29, 1991, the Board informed the Port of Houston Authority that it had denied the application for the Texas City site. Plaintiffs then commenced this action.

## II. CONTENTIONS OF THE PARTIES

Plaintiffs contend the Court of International Trade (CIT) has subject matter jurisdiction under 28 U.S.C. § 1581(i)(1)–(2), (4) to review a decision by the FTZ Board denying a subzone application. Transcript of Oral Argument (Tr.) at 8. According to plaintiffs, because the FTZ Act determines whether and when imports brought into FTZs will be subject to customs liability, the Act directly relates to tariffs and duties within the meaning of § 1581(i)(1)–(2), (4). Tr. at 9.

As to the merits of the Board's decision, plaintiffs argue the Board acted arbitrarily, capriciously and abused its discretion when it ignored the applicable statutory criteria for granting or denying subzone status set forth in 19 U.S.C. §§ 81f(b), 81g (1988). Plaintiffs claim the Board wrongfully added a public interest test to its regulations just before the issuance of the Resolution and Order of the Board, which disapproved subzone status for plaintiffs' Texas City refinery as not in the public interest. Plaintiffs urge further that even if Congress had not passed an amendment to the FTZ Act which specifies that property held in a FTZ for export or imported and held for processing is not subject to state and local *ad valorem* taxes, Article 1, §§ 8 and 10 of the Constitution require that result.[1]

---

1. Article 1, Section 8 of the Constitution provides in part: "The Congress shall have power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States; but all duties, imposts and excises shall be uniform throughout the United States...." Article

1, Section 10 of the Constitution states the following in relevant part: "No state shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws...."

Defendants contend the FTZ Act does not provide for judicial review of a denial of a subzone application and only permits judicial review in the limited instance of *revocation* of FTZ grants, citing 19 U.S.C. § 81r(c). According to defendants, the limited grant of reviewability for revocation (to the Court of Appeals for the Circuit in which the zone is located) would be superfluous if all Board actions were judicially reviewable. Furthermore, defendants assert that if the Court determines it has jurisdiction, the Board's denial of the application as not in the public interest was proper and was not arbitrary, capricious or an abuse of discretion.

Amici curiae argue the Port Authority of Houston rather than plaintiff Phibro is the real party in interest in this action because the Port Authority submitted the subzone application at issue. Amici urge, therefore, that plaintiff Phibro lacks standing to bring this suit. Amici further contend that because the Port Authority has not joined this action, the action is not properly before the Court under USCIT R. 17(a). With respect to the decision made by the Board, amici curiae maintain the Board properly considered the lost tax revenue that a grant of subzone status would occasion and that the potential lost revenues required the Board to deny the subzone application.

### III. DISCUSSION

The threshold issue presented by this case is whether the CIT has subject matter jurisdiction to review a decision by the FTZ Board denying an application for special subzone status. For the reasons which follow, the Court concludes that it lacks subject matter jurisdiction to review such decisions.

The primary jurisdictional authority for the CIT resides in 28 U.S.C. § 1581(a)–(i) (1988). Congress added § 1581 to the Customs Court Act of 1980 to delineate when parties may bring suit in the Court. *See* Customs Court Act of 1980, Pub.L. No. 96–417, 94 Stat. 1727 (1980). In enacting § 1581, Congress intended to clarify jurisdictional disputes that had previously arisen between this Court and the district courts, indicating "that the expertise and national jurisdiction of the Court of International

Trade ... be exclusively utilized in the resolution of conflicts and disputes arising out of the tariff and international trade laws...." H.R.REP. No. 1235, 96th Cong., 2d Sess. 27–28 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3739.

Congress enacted § 1581(i) to resolve these jurisdictional disputes. This subsection reads as follows:

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 or by a binational panel under article 1904 of the United States–Canada Free-Trade Agreement and section 516A(g) of the Tariff Act of 1930.

Customs Court Act of 1980, Pub.L. No. 96–417, 94 Stat. 1728, as amended, 28 U.S.C. § 1581(i) (1988).

The courts have reached different conclusions with respect to the scope of this Court's jurisdiction under § 1581(i). Whereas the CIT has tended to view the jurisdictional

grant under § 1581(i) broadly,[2] the Court of Appeals for the Federal Circuit and the Supreme Court have construed the grant narrowly.[3] The effect of these latter decisions has been to constrict the jurisdictional passage to the CIT under § 1581(i). These cases teach that potential litigants must first seek relief in the enumerated subsections § 1581(a)–(h) before invoking the Court's residual jurisdiction under § 1581(i). *Uniroyal*, 69 CCPA at 183–84, 687 F.2d at 472; *Miller*, 5 Fed.Cir. (T) at 124, 824 F.2d at 963; *National Corn Growers*, 6 Fed.Cir. (T) at 84, 840 F.2d at 1558. In addition, litigants may not invoke jurisdiction under § 1581(i) "when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Miller*, 5 Fed.Cir. (T) at 124, 824 F.2d at 963; *accord Conoco, Inc. v. United States Foreign–Trade Zones Bd.*, 16 CIT ——, ——, 790 F.Supp. 279, 288 (1992) (*Conoco II*), *appeal docketed*, No. 92–1396 (Fed.Cir. June 8, 1992).

The divergent results in the above cases seem to proceed from ambiguities within the legislative history of § 1581(i). *See Conoco II*, 16 CIT at ——, 790 F.Supp. at 283 (discussing the legislative history's ambiguity). While purporting to establish a "broad jurisdictional grant" to the CIT that would erase the jurisdictional conflict existing between the CIT and the district courts, Congress also indicated that "[s]ubsection (i) is intended only to confer subject matter jurisdiction upon the court, and *not to create any new causes of action not founded on other provisions of law*." H.R.Rep. No. 1235, 96th Cong., 2d Sess. 47 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3758–59 (emphasis added). The courts, in turn, have interpreted the "other provisions of law" to which Congress refers in its legislative history as paragraphs (1) through (4) of subsection (i). *K Mart*, 485 U.S. at 188, 108 S.Ct. at 958, *construed in Conoco II*, 16 CIT at ——, 790 F.Supp. at 283. In view of the relevant legislative history and case law interpretation of § 1581(i), it is clear this subsection will "cover actions not delineated in subsections (a)–(h) when those actions *arise out of* United States laws providing for those more general matters outlined in paragraphs (1)–(4)...." *Conoco II*, 16 CIT at ——, 790 F.Supp. at 284.

The exact reach of paragraphs (1) through (4), however, remains ambiguous. As a result, courts heavily scrutinize claims predicated on § 1581(i) to determine whether they fit within the confines of paragraphs (1) through (4). For example, in *K Mart*, plaintiffs sought an injunction against regulations promulgated by the Customs Service which allowed gray-market goods to enter the United States. *K Mart*, 485 U.S. at 181, 108 S.Ct. at

---

2. *See, e.g., Di Jub Leasing Corp. v. United States*, 1 CIT 42, 46, 505 F.Supp. 1113, 1117 (1980), *aff'd in part and rev'd in part on other grounds sub nom. United States v. Bar Bea Truck Leasing Co., Inc.*, 1 Fed.Cir. (T) 151, 713 F.2d 1563 (1983) (review of a customshouse cartman's license revocation held to be intertwined and directly related to the administration and enforcement of law providing for revenue from imports under § 1581(i)(1) and (4)); *National Bonded Warehouse Ass'n v. United States*, 13 CIT 78, 706 F.Supp. 904 (1989) (jurisdiction found under § 1581(i)(4) over a challenge to annual bonded warehouse fees); *Sharp Elecs. Corp. v. United States*, 13 CIT 732, 720 F.Supp. 1014 (1989) (finding that § 1581(i) jurisdiction encompasses administration of a settlement agreement in antidumping action); *National Customs Brokers & Forwarders Ass'n v. United States*, 13 CIT 803, 723 F.Supp. 1511 (1989), and 14 CIT 108, 731 F.Supp. 1076 (1990) (jurisdiction under § 1581(i) exists over action seeking to compel issuance of regulations for courier services permitted to enter certain merchandise).

3. *See, e.g., K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988) (import prohibition enforced by private plaintiff is not an embargo within § 1581(i)(3) that would give the CIT exclusive jurisdiction); *National Corn Growers Ass'n v. Baker*, 6 Fed.Cir. (T) 70, 840 F.2d 1547 (1988) (§ 1581(i) does not provide jurisdiction for the CIT when the protest procedure of § 1581(b) covers the action); *Miller & Co. v. United States*, 5 Fed.Cir. (T) 122, 824 F.2d 961 (1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988) (If a remedy under § 1581(a)–(h) is or could have been available, plaintiff asserting § 1581(i) jurisdiction has the burden of showing how that remedy would be "manifestly inadequate."); *United States v. Uniroyal, Inc.*, 69 CCPA 179, 687 F.2d 467 (1982) (jurisdiction under § 1581(i) improper because plaintiff could have filed a protest under § 1581(a) to challenge anticipated assessments).

955. Plaintiffs asserted the CIT had exclusive jurisdiction over the case under § 1581(i)(3), which vests jurisdiction in that court for causes of action against the United States arising out of any law providing for "embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety." *Id.* at 183, 108 S.Ct. at 956. The Supreme Court rejected plaintiffs' claim on the grounds that the import prohibition plaintiffs sought to enforce was not an embargo within the meaning of § 1581(i)(3), but rather "a mechanism by which a private party might, at its own option, enlist the Government's aid in restricting the quantity of imports in order to enforce a private right." *Id.* at 185, 108 S.Ct. at 957. Because § 1581(i)(3) did not apply to the import prohibition at issue, the Court found the CIT did not have exclusive jurisdiction over the case and jurisdiction was proper in the federal district court. *Id.* at 182–85, 188–89, 108 S.Ct. at 955–57, 958–59.

*K Mart's* narrow construction of § 1581(i)(3) parallels the decisions noted previously which restricted access to this Court under § 1581(i). The restrictions observed by *K Mart,* however, differed from the jurisdictional prerequisites recognized in cases such as *Uniroyal, Miller,* and, most recently, *Conoco II.* Whereas these latter cases addressed the *procedural* limitations on § 1581(i) jurisdiction, *K Mart* dealt with the *substantive* limitations within § 1581(i). *See also Olympus Corp. v. United States,* 792 F.2d 315 (2d Cir.1986), *cert. denied,* 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988) (holding that the CIT does not have exclusive jurisdiction under § 1581(i)(3) to hear a challenge to Customs Service regulations permitting parallel importation of "gray market" goods). Accordingly, the *K Mart* Court emphasized that "Congress did not commit to the Court of International Trade's exclusive jurisdiction *every* suit against the Government challenging customs-related laws and regulations." *Id.* at 188, 108 S.Ct. at 958 (emphasis in original). The rationale adopted by *K Mart* appears to require this Court to scrutinize closely all claims jurisdictionally predicated on § 1581(i)(1)–(4) and to adhere strictly to the precise language contained in these subsections. As a result, after examining § 1581(i) and the statutory guidelines within the FTZ Act that determine whether the Board should grant a subzone application, this Court concludes that it lacks subject matter jurisdiction in this case.

Two reasons compel this conclusion. First, the statutory guidelines that underlie the Board decision at issue and that form the basis for plaintiffs' claim, do not correspond to § 1581(i). These guidelines state the following: "If the Board finds that the proposed plans and location are suitable for the accomplishment of the purpose of a foreign trade zone under this chapter, and that the facilities and appurtenances which it is proposed to provide are sufficient it shall make the grant." 19 U.S.C. § 81g (1988). This statute requires the Board to grant a FTZ or subzone application if: (1) the applicant's proposed plans and location "are suitable for the accomplishment of the purpose of a foreign trade zone"; and (2) the applicant proposes to provide sufficient "facilities and appurtenances." Plaintiffs, in turn, predicate jurisdiction on § 1581(i)(1)–(2), (4), which authorize the Court to preside over

> any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
>
> (1) revenue from imports or tonnage;
>
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> .    .    .    .    .
>
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection. . . .

28 U.S.C. § 1581(i)(1)–(2), (4). In essence, these provisions only allow jurisdiction over claims that arise from a law that "provide[s] for ... revenue from imports ... [,] tariffs [or] duties ... [, or the] administration and enforcement" over such matters. Plaintiffs' claim under the FTZ Act does not satisfy the jurisdictional requirements of § 1581(i)(1)–

(2), (4) because § 81g's guidelines clearly do not authorize or otherwise "provide for" revenues or tariffs, or the administration and enforcement thereof. Instead, § 81g sets forth the standards that Congress intended the FTZ Board to apply in the FTZ application process. As a result, this Court finds that plaintiff has not stated a claim that allows the Court to exercise jurisdiction under § 1581(i).

A second reason that precludes this Court's jurisdiction is that the purpose of the FTZs is contrary to the Court's authority under § 1581(i) to review claims relating to *imports*. As indicated by the legislative history of the Customs Courts Act of 1980, Congress established § 1581(i) for the purpose of granting the CIT "jurisdiction over those civil actions which arise directly out of an import transaction and involve one of the many international trade laws." H.R.Rep. No. 1235 at 33, *reprinted in* 1980 U.S.C.C.A.N. 3745. The language adopted in § 1581(i)(1)–(4) furthers this purpose because each subsection relies on an import-related transaction for its application. The FTZs, on the other hand, are mechanisms by which Congress seeks to facilitate *export* transactions:

> The purpose of a foreign-trade zone ... is "to encourage and expedite that part of a nation's foreign trade which its government wishes to free from the restrictions necessitated by customs duties. *In other words, it aims to foster the dealing in foreign goods that are imported, not for domestic consumption, but for reexport to foreign markets and for conditioning, or for combining with domestic products previous to export.*"

S.Rep. No. 905, 73d Cong., 2d Sess. 2 (1934) (quoting the 1918 Report to the Chairman of the Commerce Committee by the Tariff Commission) (emphasis added); *see also* S.Rep. No. 1107, 81st Cong., 1st Sess. (1950), *reprinted in* 1950 U.S.Code Cong.Serv. 2533–34 (1952) (FTZs were created "for the purpose of expediting and encouraging foreign commerce"). Because Congress has authorized FTZs for the express purpose of encouraging exports, the Court concludes that its residual jurisdiction over import-related

matters under § 1581(i) does not apply to decisions by the FTZ denying a subzone application. The fact that the FTZ scheme adopted by Congress achieves its ends by eliminating import-related obstacles, ie. duties that would otherwise accrue for goods brought into the United States customs territory, does not make the FTZ sufficiently related to import transactions to support jurisdiction under § 1581(i). Accordingly, this Court holds that it does not have subject matter jurisdiction to review a decision by the FTZ Board denying an application for special subzone status.

■ It nevertheless could be argued that because the Customs Service inspects activities undertaken in the FTZs, administers drawback, warehousing, and bonding between the FTZs and the customs territory, and collects duties from goods which leave the FTZs for the customs territory, the FTZs are inextricably intertwined with the laws providing for revenues so as to give this Court jurisdiction under § 1581(i)(1)–(2), (4). *See* 19 U.S.C. § 81c(a) (1988 & Supp. II 1992) (indicating, among other things, that goods moving from the FTZs into the United States customs territory are to be treated like imported merchandise and that goods moving from the customs territory into the FTZs are to considered exports for purposes of "draw-back, warehousing, and bonding, or any other provisions of the Tariff Act of 1930"); *Di Jub Leasing Corp. v. United States,* 1 CIT 42, 46, 505 F.Supp. 1113, 1117 (1980), *aff'd in part and rev'd in part on other grounds sub nom. United States v. Bar Bea Truck Leasing Co., Inc.,* 1 Fed.Cir. (T) 151, 713 F.2d 1563 (1983) (reasoning that the "revocation of a cartman's license pursuant to the customs regulations is so intertwined with and directly related to the *administration and enforcement* of the laws providing for revenues from imports" that jurisdiction in the CIT is proper under § 1581(i)(1) and (4)) (emphasis in original). This Court, however, will not give weight to these arguments absent statutory authority to do so. *Cf. Conoco II,* 16 CIT at ——, 790 F.Supp. at 288 ("This Court is powerless to act where its jurisdiction has not been properly invoked."). The CIT can not exercise jurisdiction over all matters simply because they may somehow

be related to imports. *See K Mart,* 485 U.S. at 188, 108 S.Ct. at 958.

The Court further observes that this case demonstrates the need for judicial oversight of decisions by the FTZ Board. Such oversight is favored by the Administrative Procedures Act. *See Bowen v. Massachusetts,* 487 U.S. 879, 901–04, 108 S.Ct. 2722, 2735–37, 101 L.Ed.2d 749 (1988); *Abbott Labs. v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967). Litigants should not be required to play judicial ping-pong in order to determine whether Board decisions are subject to judicial review. In ·this case, plaintiffs argue the FTZ Board has directly thwarted the will of Congress by denying its application for subzone status on account of the lost assessed valuation for the tax base of the local municipalities. Defendants, on the other hand, assert the government can do as it wishes and ignore the will of Congress without being held to account.[4] Lack of judicial oversight in matters such as those presented in the instant case will breed administrative arrogance and frustrate commercial and employment opportunities. Nevertheless, this Court is powerless to act without statutory authority. Remedies, if they come at all, must come from Congress.

The Court also finds a clear need for national standards in administering the FTZs and in reviewing FTZ Board decisions. By way of analogy, the Court notes that the constitutional mandate contained in Article 1, Section 8 of the Constitution, which requires "all duties, imposts and excises [to] be uni-form throughout the United States," necessitates national standards with respect to import matters.[5] Although FTZs facilitate exports, the need for uniformity in FTZ matters is equally compelling despite the fact such uniformity is not constitutionally required. The FTZs are as integral to United States economic and trade policy as are the import-related laws pertaining to customs, dumping, and countervailing duties. The FTZs, like the customs, dumping, and countervailing duties laws, are instruments which further the particular goals established by the United States with respect to balance of trade, international and domestic commercial development, and employment. These aspects of the FTZs underscore the fact that decisions by the FTZ Board have national consequences which, in turn, necessitate uniform treatment by the courts. Because the CIT has national jurisdiction, this Court appears best able to uniformly interpret the FTZ laws and develop a consistent methodology for reviewing FTZ Board decisions.

The problems presented by this case further demonstrate the need for Congress to "re-examine how to implement the broad jurisdictional mandate it sought to confer upon the Court of International Trade with the enactment of § 1581(i) to ensure compliance with the constitutional mandate requiring uniformity of duties throughout the United States." *Conoco II,* 16 CIT at ——, 790 F.Supp. at 289. Perhaps the enumerated categories contained in § 1581(i) should give way to a more general provision that grants

---

**4.** The Court notes that the government's arguments in this case and other FTZ cases are particularly probative of the problems which exist in the CIT's authority under § 1581(i). In this action the government argues the FTZ Act precludes judicial review of FTZ Board decisions in all instances except for the revocation of a FTZ grant under 19 U.S.C. § 81r. Therefore, the government urges the FTZ Board can be as arbitrary and capricious as it would like in its decision-making except as to matters covered by § 81r. Tr. at 20–21. In addition, the government concedes that if this Court were to find that FTZ Board decisions were subject to judicial review, jurisdiction would be proper in the CIT under § 1581(i)(1)–(2) and (4). Tr. at 22. The government adopted virtually the same position before the United States District Court for the District of Columbia when it argued the CIT has exclusive jurisdiction under § 1581(i)(4) to re-view decisions by the Board. Defendant's Mem. at 6–7, *Miami Free Zone Corp. v. Foreign–Trade Zones Bd.,* 803 F.Supp. 442 (D.D.C.1992) Nevertheless, it appears that the government's view in this case and in *Miami Free Zone* clearly contradicts the view it adopted in *Conoco II* where it argued that *no* court has subject matter jurisdiction to review decisions by the FTZ Board. *See Conoco II,* 16 CIT at ——, 790 F.Supp. at 289. The fact that the government has succeeded with these divergent arguments in this case, in *Miami Free Zone,* and in *Conoco II,* further underscores the need to rectify the problems spawned by this Court's jurisdictional grant.

**5.** This constitutional provision is also the foundation for this Court's national jurisdiction. *See* H.R.Rep. No. 1235 at 29, *reprinted in* 1980 U.S.C.C.A.N. at 3741.

the CIT jurisdiction over all customs-related matters that require national standards. Until Congress clarifies the CIT's authority, the confusion over this Court's jurisdiction will persist and potential litigants will continue to waste time and money in futile efforts to secure judicial review of their legitimate grievances. In the meantime, this nation's ability to compete around the globe will suffer.

## IV. CONCLUSION

The Court holds that plaintiffs' motion for judgment upon the agency record is denied for lack of subject matter jurisdiction.