**CONOCO, INC. et al., Plaintiffs,**

v.

**UNITED STATES FOREIGN–TRADE ZONES BOARD et al., Defendants.**

**Court No. 90–06–00289.
Slip Op. 94–105.**

United States Court of International Trade.

June 30, 1994.

Holland & Hart, William F. Demarest, Jr. and Adelia S. Borrasca, Washington, DC, and Lisa L. Bagley, Houston, TX, for plaintiff Conoco, Inc.

Charles M. Floren, Tulsa, OK, for plaintiff Citgo Petroleum Corp.

Frank W. Hunger, Asst. Atty. Gen. of the U.S., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Carla Garcia–Benitez, Washington, DC (Robert Heilferty, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel), for defendants.

## OPINION

CARMAN, Judge:

Plaintiffs move for judgment upon the agency record pursuant to USCIT R. 56.1 to challenge certain conditions imposed by the United States Foreign–Trade Zones Board (FTZB or Board) upon the grants of foreign-trade subzones to plaintiffs Conoco, Inc. (Conoco) and Citgo Petroleum Corporation (Citgo). Defendants cross-move for judgment upon the agency record. This Court has jurisdiction under 28 U.S.C. § 1581(i)(1), (4) (1988) and, for the reasons which follow, remands the action to the Board for further action consistent with this opinion.

### I. BACKGROUND

#### A. *Procedure*

Plaintiffs first raised their challenge to the Board's conditions in a suit filed in the United States District Court for the Western District of Louisiana, Lake Charles Division. The district court dismissed plaintiffs' suit pursuant to FED.R.CIV.P. 12(b)(1) after concluding it lacked subject matter jurisdiction. *Conoco, Inc. & Lake Charles Harbor & Terminal Dist. v. United States Foreign–Trade Zones Bd.*, No. 89–1717–LC (W.D.La.1990) (order dismissing plaintiffs' suit).

Thereafter, plaintiffs commenced this action in the United States Court of International Trade (CIT). In the CIT, defendants again sought to dismiss plaintiffs' case for lack of subject matter jurisdiction and on the grounds that the Board decision at issue is not subject to judicial review. *See Conoco, Inc. v. United States Foreign–Trade Zones Bd.*, 16 CIT 231, 232, 790 F.Supp. 279, 280

(1992), *rev'd,* 12 Fed.Cir. (T) —, 18 F.3d 1581 (1994). The CIT granted defendants' motion to dismiss for lack of subject matter jurisdiction and denied plaintiffs' motion for judgment upon the agency record. *Id.* at 244, 790 F.Supp. at 289.

Plaintiffs then appealed the CIT's decision to the United States Court of Appeals for the Federal Circuit (CAFC). The CAFC reversed the CIT's determination, holding "the orders of the FTZB, absent a clear and unequivocal expression of Congressional intent to the contrary, are generally subject to judicial review...." *Conoco,* 12 Fed.Cir. (T) at —, 18 F.3d at 1585. The appellate court also found the terminology contained in 28 U.S.C. § 1581(i)(1) "easily ... embrace[s] the matters [plaintiffs] raise" and "the kinds of administrative conditions placed on the grant to [plaintiffs] falls [sic] comfortably within the scope of [the] language [of 28 U.S.C. § 1581(i)(4) ]." *Id.* at —, 18 F.3d at 1588; *see also Miami Free Zone Corp. v. Foreign Trade Zones Bd.,* 22 F.3d 1110, — – — (D.C.Cir.1994) (noting the CIT has exclusive jurisdiction to hear a challenge to the grant of a zone application by the Board on the basis of the CAFC's *Conoco* decision, but also indicating 28 U.S.C. § 1581(i)(2) provides a jurisdictional basis for the CIT). Because the CIT never addressed plaintiffs' substantive claims, the CAFC remanded the action for an adjudication on the merits. *Id.* at —, 18 F.3d at 1590.

### B. *Facts*

The Lake Charles Harbor and Terminal District (District) operates a foreign trade zone in Lake Charles, Louisiana pursuant to a grant from the Board under 19 U.S.C. § 81b(a) (1988). As described by the CAFC,

[a] foreign trade zone is a geographical area located adjacent to or in a port of entry into the United States. *See* 19 U.S.C. § 81b (1988). The grantee of a zone—District here—has the authority to permit others to operate within the zone subject to the approval of the Board. *See* 19 U.S.C. § 81m (1988). A company operating within the zone can import foreign merchandise into the zone and manufac-

ture finished merchandise therefrom. *See* 19 U.S.C. § 81c (1988). It can elect whether to pay duties on the foreign merchandise when it is imported into the zone, or on the finished merchandise when it is imported into U.S. customs territory for domestic consumption. The company can thus take advantage of any favorable differential between the rate of duty for the foreign merchandise and that for the finished merchandise. *See Armco Steel Corp. v. Stans,* 431 F.2d 779, 782 (2d Cir.1970).

*Id.* at — n. 2, 18 F.3d at 1582 n. 2.

Foreign trade zone grantees may also apply to the Board for the establishment of a foreign trade subzone. *See id.* at — n. 3, 18 F.3d at 1582 n. 3 (citing 15 C.F.R. § 400.-106 (1991)). "A subzone has all the characteristics of a zone except that it is an area separate from an existing zone." *Id.,* 18 F.3d at 1582 n. 3 (citing 15 C.F.R. § 400.304 (1991)). The Board may only authorize the establishment of a subzone if it "finds that existing or authorized zones will not serve adequately the convenience of commerce with respect to the proposed purposes." 15 C.F.R. § 400.304. Pursuant to the foregoing regulations, the District filed subzone applications for plaintiffs Conoco and Citgo in April and December 1986, respectively, for their individual crude oil refineries at the Port of Lake Charles, Calcasieu Parish, Louisiana.

The Board subsequently approved the Conoco application on December 16, 1988 and the Citgo application on June 21, 1989. In granting the subzone applications, however, the Board imposed two conditions which the CAFC characterized as follows:

(1) that duties be paid on foreign crude oil used as fuel (or refined into products used as fuel) in the refineries; and

(2) that Conoco and Citgo elect "privileged foreign status" for foreign crude oil brought into their respective subzones, *i.e.,* elect to pay duties on the value of that crude oil as opposed to the value of refined products produced therefrom.[1]

*Conoco,* 12 Fed.Cir. (T) at —, 18 F.3d at 1583; *see also Resolution and Order Approv-*

---

**1.** The FTZB imposed and subsequently revoked a third condition that is immaterial to this action.

ing the Application of the Lake Charles Harbor and Terminal District for a Subzone at the Conoco, Inc., Refinery in Calcasieu Parish, LA, 53 Fed.Reg. 52,455 (FTZB 1988) (*Conoco Resolution and Order*); *Resolution and Order Approving the Application of the Lake Charles Harbor and Terminal District for a Subzone at the Citgo Petroleum Corp. Refinery in Calcasieu Parish, LA,* 54 Fed. Reg. 27,660 (FTZB 1989) (*Citgo Resolution and Order*). "Imposition of these conditions, which the ... Board has apparently applied to all new refinery subzone grants after 1985, marked a departure from prior Board practice." *Conoco,* 16 CIT at 233, 790 F.Supp. at 281. "It is [also] the imposition of these conditions on the grant of subzone status that lies at the heart of this case." *Conoco,* 12 Fed.Cir. (T) at ——, 18 F.3d at 1583.

## II. CONTENTIONS OF THE PARTIES

Plaintiffs raise two separate challenges to the Board's conditions. First, plaintiffs contend the Board lacked the authority under the FTZA to impose the conditions. Pls.' Br. at 13–16. Plaintiffs assert the Board based its decision to condition the Conoco's and Citgo's grants on market considerations that are outside the purview of the Board's authority to address. *Id.* at 13–14. In sum, plaintiffs claim the conditions improperly abrogate the "fuel consumption" benefit and statutory election between "foreign-privileged" and "non-privileged" status for merchandise entered into subzones, both of which plaintiffs suggest are available as a matter of right to zone operators under the FTZA. *Id.* at 10–11, 16–18. Second, plaintiffs maintain the Board failed to provide any reasons for imposing the conditions or for diverging from its earlier policy of allowing subzone operators to consume fuel in their subzone operations. *Id.* at 20–21. In so doing, plaintiffs urge the Board acted arbitrarily and capriciously in violation of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706 (1988). *Id.* at 21.

Defendants claim the Board properly decided to impose the disputed conditions on Conoco's and Citgo's subzone grants. Defendants argue the "wide discretion" that Congress has vested in the Board, the plain language of the FTZA, and the Act's legisla-

tive history all demonstrate the Board lawfully imposed the conditions at issue. Defs.' Br. at 19–23. Defendants emphasize the fact that the Act expressly permits the Board to exclude from the zones "any goods or process of treatment that in its judgment is detrimental to the public interest ..." and claim the term "public interest" is broad enough to encompass the protection of domestic industry—the purpose for which defendants suggest the Board acted. *See id.* at 26–27 (citing 19 U.S.C. § 81(c)). Finally, defendants contend the Board did not act arbitrarily or capriciously and did not abuse its discretion in violation of the APA. *Id.* at 30–31. According to defendants, the record clearly indicates the Board considered a variety of factors and the input of various agencies and departments in reaching its determination. *Id.* at 30. Consequently, defendants urge the Board complied with the APA's requirements.

## III. DISCUSSION

### A. *Standard of Review*

The statutory provisions governing the scope and standard of review in actions brought in the CIT appear in 28 U.S.C. § 2640. This section indicates the following:

**§ 2640. Scope and standard of review**

(a) The Court of International Trade shall make its determinations upon the basis of the record made before the court in the following categories of civil actions:

(1) Civil actions contesting the denial of a protest under section 515 of the Tariff Act of 1930.

(2) Civil actions commenced under section 516 of the Tariff Act of 1930.

(3) Civil actions commenced to review a final determination made under section 305(b)(1) of the Trade Agreements Act of 1979.

(4) Civil actions commenced under section 777(c)(2) of the Tariff Act of 1930.

(5) Civil actions commenced to review any decision of the Secretary of the Treasury under section 641 of the Tariff Act of 1930, with the exception of deci-

sions under section 641(d)(2)(B), which shall be governed by subdivision (d) of this section.

**(6)** Civil actions commenced under section 1582 of this title.

**(b)** In any civil action commenced in the Court of International Trade under section 516A of the Tariff Act of 1930, the court shall review the matter as specified in subsection (b) of such section.

**(c)** In any civil action commenced in the Court of International Trade to review any final determination of the Secretary of Labor under section 223 of the Trade Act of 1974 or any final determination of the Secretary of Commerce under section 251 or section 271 of such Act, the court shall review the matter as specified in section 284 of such Act.

**(d)** In any civil action commenced to review any order or decision of the Customs Service under section 499(b) of the Tariff Act of 1930, the court shall review the action on the basis of the record before the Customs Service at the time of issuing such decision or order.

**(e)** *In any civil action not specified in this section, the Court of International Trade shall review the matter as provided in section 706 of title 5.*

28 U.S.C. § 2640 (1988), *as amended by* Pub.L. No. 103–182, § 684(a)(4), 28 U.S.C.A. § 2640 (West Supp.1994) (emphasis added). Because § 2640(a) through (d) do not pertain to determinations made by the Foreign–Trade Zones Board, the Court concludes § 2640(e) mandates the application of 5 U.S.C. § 706 in this case. The Court also notes the parties' agreement that 5 U.S.C. § 706 provides the standard of review applicable in this case. *See* Letter of May 5, 1994 from William F. Demarest, Jr., Counsel for Plaintiffs, to the Court (Demarest Letter); Letter of April 28, 1994 from Mark S. Sochaczewsky, former Counsel for Defendants, to the Court (Sochaczewsky Letter).

Section 706 is among "[t]he APA's comprehensive provisions for judicial review of 'agency actions.'" *Heckler v. Chaney*, 470 U.S. 821, 828, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985). The section sets forth the following standards which the courts must apply in reviewing such actions:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to section 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (1988). Plaintiffs claim the Court must apply § 706(2)(C) to their threshold argument that the Board lacked the authority to impose the conditions at issue and § 706(2)(A) to their other challenges which target the Board's decision-making. *See* Demarest Letter. Defendants, however, appear to indicate the Court need only apply the standard contained in § 706(2)(A). *See* Sochaczewsky Letter.

■  Case law addressing § 706's various standards provides the Court with a clear indication as to what standards of review apply in this case. "In all cases agency

action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–14, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971) (citing 5 U.S.C. § 706(2)(A), (B), (C), (D)). Consistent with this direction, and as plaintiffs correctly maintain, the Court must first "decide whether the [Board] acted within the scope of [its] authority" in order to determine whether the Board's action violated § 706(2)(C). *Id.* at 415, 91 S.Ct. at 823 (citing *Schilling v. Rogers,* 363 U.S. 666, 676–77, 80 S.Ct. 1288, 1295–96, 4 L.Ed.2d 1478 (1960)). Should the Court decide the Board acted within the scope of its authority, the Court may then consider whether the Board's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of § 706(2)(A). *See id.,* 401 U.S. at 416, 91 S.Ct. at 817. Because plaintiffs do not contend the Board committed any procedural or constitutional violations and this action is not subject to 5 U.S.C. §§ 556, 557 or a trial *de novo,* the Court finds the standards set forth in § 706(2)(B), (D), (E), (F) are immaterial to this action. Consequently, the Court concludes the standards of review it must apply to the Board's decision to impose the conditions on Conoco's and Citgo's subzone grants are those contained in § 706(2)(A), (C).

**B.** *The Foreign–Trade Zones Board's Decision*

■ It is axiomatic that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). In connection with the arbitrary and capricious standard of review under 5 U.S.C. § 706(2)(A), the scope of review "is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a

'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)). "While [the courts] may not supply a reasoned basis for the agency's action that the agency itself has not given, ... [the courts must] uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285–86, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (citations omitted).

Although the Supreme Court articulated the foregoing analysis in relation to administrative determinations reviewed under § 706(2)(A), the principles applied in the analysis are relevant whenever the courts are called upon to review administrative action. *See, e.g., Chenery Corp.,* 332 U.S. at 207, 67 S.Ct. at 1582 ("The scope of our review of an administrative order wherein a new principle is announced and applied is no different from that which pertains to ordinary administrative action."). In the instant case, therefore, in reviewing the Board's action under 5 U.S.C. § 706(2)(C) for conformity to its statutory authority, the Court must examine the basis for the Board's action and determine whether it is within the scope of the Board's authority. Therefore, as suggested previously,

> [i]f the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.

*Id.* at 196–97, 67 S.Ct. at 1577.

In this case, the Court finds the Board's decision to impose the disputed conditions on Conoco's and Citgo's subzone grants does not contain an understandable basis that would permit the Court to determine whether the Board acted within the scope of its authority. The notices that the Board published to an-

nounce its decisions to approve the two companies' subzone applications with the two conditions simply do not indicate on what basis the Board imposed the conditions. *See Conoco Resolution and Order,* 53 Fed.Reg. at 52,455–56; *Citgo Resolution and Order,* 54 Fed.Reg. at 27,660–61. While the notices indicate the proposed subzones would satisfy the FTZA's requirements, the Board's regulations, and "would be in the public interest, if approval is subject to certain conditions,"[2] the notices do not explain why the Board imposed the conditions, how the conditions serve the public interest, or how the conditions conform the proposed subzones to the FTZA's requirements and the Board's regulations.

Moreover, during oral argument in the case after remand from the CAFC, defendants' counsel was unable to point to anything in the record which indicates upon what grounds *the Board* decided to impose the disputed conditions. Instead, counsel cited to transmittal letters from the FTZB's Executive Secretary, John J. Da Ponte, to the Assistant Secretary of the Treasury, the Commissioner of Customs, and the Department of the Army's Acting Resident Member of the Board of Engineers for Rivers and Harbors. *See* Conoco Pub.R.Docs. 58–60, Frs. 552–54; Citgo Pub.R.Docs. 29–31, Frs. 307–09. These letters accompanied proposed draft resolutions approving Conoco's and Citgo's subzone applications with the contested conditions attached. Each of the letters, except for those addressed to the Assistant Secretary of the Treasury, noted "[t]he restricted approval we are proposing here is similar to that given in the recent Trans-America case." Conoco Pub.R.Docs. 58–59, Frs. 552–53; Citgo Pub.R.Docs. 30–31, Frs. 308–09. The transmittal letters provided no further explanation for proposing the imposition of the disputed conditions.

Although several record documents help clarify the connection between the Trans-

America case and Conoco's and Citgo's subzone applications and the possible bases for imposing the conditions,[3] the Board's own decisions to grant the companies' applications with the conditions provide no such clarification. This lack of clarity in the Board's decisions prevents the Court from discerning the path the Board followed in conditioning the companies' subzone grants and improperly requires the Court to "supply a reasoned basis for the [Board's] action that the [Board] itself has not given...." *Bowman Transp.,* 419 U.S. at 285–86, 95 S.Ct. at 442. While the Court may surmise upon what grounds the Board decided to impose the conditions, the Board and not the Court bears the burden of "articulat[ing] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866 (quotation and citation omitted). Because the Board has failed to set forth adequately the basis for imposing the conditions on Conoco's and Citgo's subzone grants, the Court finds it is unable to ascertain pursuant to 5 U.S.C. § 706(2)(C) whether the Board acted in conformity with its statutory authority. The Court also finds the deficiencies in the Board's explanation of its action precludes the Court from determining whether the Board's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under 5 U.S.C. § 706(2)(A). The Court, therefore, will remand this action to the Board so that it may fully explain the rationale underlying the decisions at issue.

## IV. CONCLUSION

The Court holds the Board failed to articulate the basis upon which it decided to impose the challenged conditions on Conoco's and Citgo's subzone grants. The Court remands this action to the Board so that it may fully explain the rationale underlying its decision to condition Conoco's and Citgo's subzone grants.

---

2. *Conoco Resolution and Order,* 53 Fed.Reg. at 52,455; *Citgo Resolution and Order,* 54 Fed.Reg. at 27,660.

3. *See* Office of Energy's Mem. on Subzone Applics., Conoco Pub.R. at Frs. 534–41, App. E to Citgo Pub.R.Doc. 28, Frs. 289–96; Examiners Comm. Report on Conoco's Applic., Conoco Pub. R.Doc. 57, Frs. 519–28; Examiners Comm. Re-

port on Citgo's Applic., Citgo Pub.R.Docs. 28, Frs. 275–83; TransAmerican Decision Mem. Conoco Pub.R. at Frs. at 542–47, App. F. to Citgo Pub.R.Doc. 28, Frs. 297–302; Conoco Decision Mem., Conoco Pub.R.Doc. 63, Frs. 559–62; Citgo Decision Mem., Citgo R.Pub.Docs. 38–39, Frs. 322–26.

On remand, in addition to whatever matters the Board deems appropriate to address, the Board shall explain whether and in what manner the conditions it has imposed on Conoco's and Citgo's subzone grants serve the public interest. The Board's Remand Results must be filed with this Court no later than Friday, July 29, 1994. Plaintiffs and defendants may each file a single response to the Board's Remand Results of no more than ten pages no later than Friday, August 5, 1994. Plaintiffs may file a reply of no more than five pages no later than Friday, August 12, 1994. No extensions of time and no further briefing shall be allowed.