**MIAMI FREE ZONE CORPORATION, Plaintiff,**

v.

**FOREIGN–TRADE ZONES BOARD, Department of Commerce, and the United States, Defendants,**

and

**Wynwood Community Economic Development Corporation, Inc., and Dade Foreign Trade Zone, Incorporated, Defendant–Intervenors.**

Slip Op. 96–21.
Court No. 93–06–00324.

United States Court of
International Trade.

Jan. 19, 1996.

Sandler, Travis & Rosenberg, P.A., Miami, FL, (Gilbert Lee Sandler, Edward M. Joffe, Arthur K. Purcell), for plaintiff.

Frank W. Hunger, Assistant Attorney General of United States; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Bruce N. Stratvert, Carla Garcia–Benitez); Robert J. Heilferty, Attorney–Advisor, Office of General Counsel, United States Department of Commerce, of counsel, for defendants.

Hogan & Hartson L.L.P., Washington, DC, (Lewis E. Leibowitz, David G. Leitch, Timothy C. Stanceu, Joanne L. Leasure), for defendant-intervenors.

1. Plaintiff titles and styles its motion as a motion for summary judgment pursuant to U.S.CIT R. 56. Defendant–Intervenors argue that because plaintiff's motion relies solely on the agency record before the Board, plaintiff should have filed its motion pursuant to U.S.CIT R. 56.1 (See Def.–Intervenors' Cross–Mot. for Summ J. at 1.) Because Rule 56 does not provide that the Court may grant summary judgment in favor of a non-movant, defendant-intervenors reason, defendant-intervenors filed a cross-motion for summary judgment to protect their interests. (See id. at 2.) Defendant also filed a cross-motion stating "[t]he interests of justice warrant acceptance of this cross-motion or treating our papers as a response under Rule 56.1 should plaintiff's motion be deemed to have been filed under that Rule." (Federal Defs.' Cross–Mot. for Summ.J. at 2 n. *.)

Section 706 of title 5 requires the Court to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706 (1994). Accordingly, the Court will treat plaintiff's motion as a motion for judgment upon the agency record pursuant to Rule 56.1. Defendant's cross-motion and reply, (see generally Fed.Defs.' Reply Br. in Supp. of Mot. for Summ.J. & in Opp'n to Pl.'s Resp.), will be treated as a single response in opposition to plaintiff's motion for judgment upon the agency record. Finally, because defendant-intervenors state in their submission to this Court entitled "CROSS–MOTION FOR SUMMARY JUDGMENT" that "defendant-intervenors are compelled to file this motion so that judgment may be entered in their favor in the event

## OPINION

CARMAN, Judge:

Plaintiff challenges the United States Foreign–Trade Zones Board's (FTZB or Board) grant of authority to defendant-intervenor, Wynwood Community Economic Development Corporation, Inc. (Wynwood) to establish, operate, and maintain a general-purpose foreign-trade zone (FTZ) in Miami, Florida, within the Miami Customs port of entry. Defendants the Foreign–Trade Zones Board, the Department of Commerce, and the United States (collectively "defendant") and defendant-intervenors urge this Court to deny plaintiff's motion.[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i)(1), (4) (1988).

## BACKGROUND

Plaintiff Miami Free Zone Corporation operates one of two general-purpose FTZs in the Miami Customs port of entry area.[2]

that the Court determines they are so entitled," (Def.–Intervenors' Cross–Mot. for Summ.J. at 2), and that defendant-intervenors "rely on their opposition to plaintiff's motion as support for [the] cross-motion," (id. at 3), the Court construes defendant-intervenors' "CROSS–MOTION FOR SUMMARY JUDGMENT" as part of defendant-intervenors' response in opposition to plaintiff's motion for judgment upon the agency record. Similarly, plaintiff responded to defendant-intervenors' "CROSS–MOTION FOR SUMMARY JUDGMENT" by stating "plaintiff is not able at this time to respond to the cross motion for summary judgment." (Pl.'s Resp. to Cross–Mot. for Summ.J. of Def.–Intervenors at 1.) Accordingly, the Court will treat plaintiff's submission entitled "MIAMI FREE ZONE CORPORATION'S RESPONSE TO CROSS MOTION FOR SUMMARY JUDGMENT OF DEFENDANT–INTERVENORS, WYNWOOD COMMUNITY ECONOMIC ZONE, INC. AND DADE FOREIGN TRADE ZONE, INC." as nothing more than docketed correspondence to this Court and not as a response to a motion. For citations purposes, however, the Court will refer to parties' submissions as titled by the parties when filed.

2. Plaintiff operates FTZ No. 32, which was approved in 1977. See Proposed Foreign–Trade Zone—Miami, FL, 55 Fed.Reg. 43,152 (Dep't Comm.1990) (notice of application filing) (Notice of Application ). The second FTZ project existing at the time of Wynwood's application, FTZ No. 166, was approved in 1990 but not activated. See id; (Fed.Defs.' Mem. in Opp'n to Pl.'s Mot. for Summ.J. & in Supp. of Fed.Defs.' Cross–Mot.

Defendant–Intervenor Wynwood is a Florida non-profit corporation.[3] On October 17, 1990, Wynwood filed an application with the Board requesting authority to establish a third general-purpose FTZ within the Miami Customs port of entry at a proposed site donated by the City of Miami for development of an FTZ. *See Notice of Application,* 55 Fed.Reg. at 43,152. Wynwood contended "the additional zone is needed to provide zone services to the Wynwood area of the Miami port of entry as part of the economic development efforts underway in that community." *Id.* On December 14, 1990, plaintiff filed an objection to Wynwood's application and requested the Board hold evidentiary hearings on the application. No hearing was held. On November 18, 1991, the Board, "finding the requirements of the Foreign–Trade Zones Act, as amended, and the Board's regulations ... satisfied, and that the proposal [was] in the public interest," approved Wynwood's application. *Application of Wynwood Community Economic Dev. Corp.,* 56 Fed.Reg. 61,227 (Dep't Comm.1991) (resolution and order) (*Wynwood Granted* ).[4]

Defendant–Intervenor Dade Foreign Trade Zone, Incorporated (Dade) informs this Court that it is a Florida corporation organized for the purpose of developing and operating the Wynwood FTZ. After the Board granted FTZ No. 180, defendant-in-

tervenors explain, Wynwood entered into a lease agreement with Dade.[5] The terms of the lease provide that Dade shall construct appropriate facilities within the zone and may sublease those facilities. Dade would pay a monthly rent for the zone, but, according to defendant-intervenors, could retain any profits from the zone's operations.

## CONTENTIONS OF THE PARTIES

### A. *Plaintiff*

Plaintiff requests this Court vacate the Board's grant of authority to Wynwood to establish, operate, and maintain FTZ No. 180, and remand this matter to the Board for an evidentiary hearing. In so doing, plaintiff advances three primary contentions. First, plaintiff contends it was entitled to a hearing to contest the Wynwood application because plaintiff possesses a constitutionally recognized property interest in FTZ No. 32 within the meaning of the Fifth Amendment's Due Process Clause. "[A]ny deprivation of [plaintiff's] property," plaintiff argues, "must be preceded by a due process right to be heard." (Br. in Supp. of Pl.'s Mot. for Summ.J. (Pl.'s Br.) at 7 (citations omitted).) Citing the United States Supreme Court's enunciation in *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), of factors considered to determine procedural protection the Constitution requires,[6] plaintiff argues those factors require a hearing be

for Summ.J. (Fed.Defs.' Opp'n) at 7–8 (citing Public Record (P.R.) 105 at 4).)

3. Wynwood characterizes itself as "a Florida non-profit corporation devoted to improving the economic, educational, and social standards of the Wynwood neighborhood of Miami, a socially and economically depressed area of Dade County adjacent to the city's downtown." (Def.–Intervenors' Opp'n to Pl.'s Mot. for Summ. J. (Def.–Intervenors' Opp'n) at 4.)

4. The Court will refer to this FTZ as the Wynwood FTZ or, as designated by the Board, FTZ No. 180.

5. In its opposition to Wynwood and Dade's motion to intervene, plaintiff complained Dade's "lease has never been approved by the City, a prerequisite to any lease holder." (Pl.'s Opp'n to Mot. to Intervene at 1; *see also id.* at 3.) The Court makes no finding on this issue.

6. The language plaintiff cites is, in part, as follows:

> To determine what procedural protections the Constitution requires in a particular case, we weigh several factors:
>> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."
> Applying this test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property.

*Zinermon,* 494 U.S. at 127, 110 S.Ct. at 984 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (further

provided in the instant case. Specifically, plaintiff maintains its interest is clearly affected in that the Foreign–Trade Zones Act (FTZA) creates a monopoly in the applicable port and allows the monopoly to continue if the grantee continues to serve the convenience of commerce. "The Board itself," plaintiff reasons, "acknowledged that the approval of an additional zone would have an anti-competitive effect on Miami Free Zone." (Pl.'s Br. at 8–9 (citation omitted).) Furthermore, plaintiff claims, the Board's procedures in this case "were materially deficient, thereby creating a risk of error." (*Id.* at 9.)[7] Finally, plaintiff argues that holding a hearing would not impose an increased burden on the government.

Plaintiff's second primary contention is that the Board misinterpreted the FTZA's statutory prerequisites for the grant of an additional zone in the same port of entry. Plaintiff points to § 81b of the FTZA which states in pertinent part: "Zones in addition to those to which a port of entry is entitled shall be authorized only if the Board finds that existing or authorized zones will not adequately serve the convenience of commerce." 19 U.S.C. § 81b(b) (1988). Plaintiff argues "commerce" as used in the FTZA means "foreign-trade." (Pl.'s Br. at 12.) Plaintiff maintains that in the present case, however, the Board incorrectly "equated 'convenience of commerce' with revitalization and economic development of the Wynwood area, *i.e.,* elimination of urban blight." (*Id.* at 10.) According to plaintiff, "[t]he Board looked to whether the public interest would be better served by the establishment of the additional zone notwithstanding the possible competition on [plaintiff]." (*Id.* at 11.) These "tests," plaintiff continues, "were based on social welfare/public interest factors which cannot be equated with whether [plaintiff] was adequately meeting the convenience of commerce *i.e.,* Foreign–Trade." (*Id.* at 12.)[8]

Finally, plaintiff contends the Board should have given plaintiff "a right of first refusal to operate Wynwood as a non-contiguous zone or a subzone." (*Id.* at 14.) According to plaintiff, as early as March 1989, plaintiff was "ready, willing and able to operate in the Wynwood area." (*Id.*) Consequently, plaintiff argues, defendant is precluded from arguing "that the existence of the special benefits created by public sector at Wynwood permits a finding that the Miami Free Zone can not serve the convenience of the commerce." (*Id.* at 15.)

### B. *Defendant*

Defendant sets forth two primary contentions in support of the Board's determination. First, defendant contends plaintiff has failed to demonstrate how approval of the Wynwood application amounts to a denial of a property right as to plaintiff. According to defendant, the United States Court of Appeals for the Federal Circuit requires "[t]hose seeking constitutional protection under the due process clause [to] point to a legitimate claim of entitlement prior to any consideration of the Government's constitutional obligations." (Fed.Defs.' Opp'n at 14–15 (quoting *American Ass'n. of Exporters & Importers—Textile and Apparel Group v.*

---

citation omitted)) (further citations omitted), *quoted in* Pl.'s Br. at 8.

7. Plaintiff argues the Board's procedures were deficient first because the Board "merely allowed a short comment period," a "particularly grievous" failure in light of plaintiff's explicit request for a hearing. (Pl.'s Br. at 9.) Second, plaintiff claims that

> [a]fter the close of the comment period, Wynwood wrote the Board at least four ... letters about [plaintiff's] objection. At the time [plaintiff] did not receive copies of these communications, and consequently, was unable to respond. The Board's decision appears to be primarily based upon those *ex parte* communications after the close of the comment period.... Accordingly, [plaintiff] was prejudiced

by its inability to controvert these *ex parte* comments to the Board.

(*Id.* (citations omitted).)

8. "The plain meaning of convenience of commerce," plaintiff continues,

> is consistent with the congressional intent to operate a harmonious FTZ Program with each individual zone servicing needs within a port without any overlap or duplication of service between the zones. Additional zones are prohibited unless a specific *finding* is made that the existing zone will not adequately serve the convenience of commerce. The Board, however, chose to ignore this test in authorizing the Wynwood foreign-trade zone.

(Pl.'s Br. at 12.)

*United States,* 3 Fed.Cir. (T) 58, 71, 751 F.2d 1239, 1250 (1985) (internal quotations and further citation omitted)).) Defendant maintains that in the present case, Greater Miami Foreign Trade Zone, Incorporated (Greater Miami), and not plaintiff, is the grantee—the recipient of the grant of authority from the Board. Under the FTZA, defendant points out, Greater Miami's "grant shall not be sold, conveyed, transferred, set over, or assigned." 19 U.S.C. § 81q (1988). Thus, defendant concludes, "the interests of a private operator are not among those interests sought to be protected by the [FTZA]." (Fed.Defs.' Opp'n at 15 (footnote and citation omitted).)

Furthermore, defendant maintains, even if plaintiff was able to establish it possesses a constitutionally protected property right based on its role as the zone grantee's private operator, plaintiff has not shown any such right has been denied. Defendant argues the very case upon which plaintiff relies indicates "due process only becomes relevant ... where licenses are revoked." (*Id.* at 16 (emphasis added in brief omitted) (quoting *Wells Fargo Armored Serv. Corp. v. Georgia Public Serv. Comm'n,* 547 F.2d 938, 941 (5th Cir.1977) (further citation omitted)).) Defendant argues that in the present case, however, no grant of authority has been revoked, "nor does the Board's decision implicate [plaintiff's] role as the exclusive operator of FTZ # 32." (*Id.*) [9] "Simply put," defendant summarizes, plaintiff

> has not demonstrated that the [FTZA] provides it with a protectable property right to be free from any and all competition....
>
> ... [N]othing in the [FTZA] evidences any intention to protect a general-purpose zone operator's parochial interest by providing it with an unassailable monopoly over zone operations in a particular Customs port of entry. Congress may have intended to promote employment through

increased trade; it did not intend, however, to provide plaintiff with an absolute monopoly over the facilitation of that trade.

(*Id.* at 17.)

As additional support for its argument rejecting plaintiff's claimed deprivation of a constitutionally protected property right, defendant argues plaintiff did have a meaningful opportunity to be heard, and that no formal hearing was required. Defendant asserts that neither the FTZA nor applicable regulations require a formal hearing.[10] Furthermore, defendant argues, the lack of a formal hearing in this case

> in no way impeded [plaintiff's] ability to comment on or refute evidence.... Plaintiff fully availed itself of the opportunity to comment which was provided by the Board. These comments—all but one of which were submitted after closure of the announced comment period—were placed on the public official record and were fully considered in the Board's deliberations.

(*Id.* at 18–19 (citations omitted).) In response to plaintiff's contention that the Board engaged in *ex parte* communications with Wynwood, defendant asserts plaintiff "fails to mention ... that it, too, provided at least four additional ... submissions for the record." (*Id.* at 20 (citations omitted).) Furthermore, defendant argues, communications received from Wynwood after close of the comment period were a matter of public record. "Consistent with its practice of accepting all comments which may be relevant to the outcome of the case, the Board continued to notify interested parties that additional comments would be given full consideration." (*Id.* (citation omitted).)

As its second primary contention, defendant contends the Board correctly applied the statutory criteria in approving the Wynwood application. Defendant explains the Board has interpreted the FTZA's require-

---

**9.** Defendant asserts that plaintiff's "position as operator of FTZ # 32 results from a private contractual relationship with the grantee which is not relevant to the due process analysis." (Fed. Defs.' Opp'n at 16 n. 6.)

**10.** Defendant explains:

> The Board's practice is to hold hearings on general-purpose zone applications when available resources permit. In cases where no hearing is held, the public *Federal Register* notice and comment period provide a comparable degree of due process and opportunity to be heard.

(Fed.Defs.' Opp'n at 18 n. 8.)

ment that "[z]ones in addition to those to which a port of entry is entitled shall be authorized only if the Board finds that existing or authorized zones will not adequately serve the convenience of commerce" [11] as "requiring a review that considers whether the additional zone will serve the 'public interest.'" (*Id.* at 22.) [12] In the case of the Wynwood application, defendant argues the Board properly considered whether "zone needs of the local community were satisfied by existing zone facilities." (*Id.* at 26.) In so doing, defendant continues, the Board made the following findings: (1) existing zones were not serving the convenience of commerce; (2) local business community expressed a need for additional zone services; (3) local officials' representations indicated the zone operated by plaintiff could not adequately serve the convenience of commerce; (4) the contractual relationship between the grantee of FTZ No. 32, Greater Miami, and plaintiff prohibited Wynwood from operating under the FTZ No. 32 license; and (5) the Miami port of entry contained a high level of international trade-related activity in the Miami port of entry.[13]

According to defendant, the Board's injection of a public interest analysis into "convenience of commerce" effectuates the purposes of the FTZA. Defendant argues that although the central purpose of the FTZA is to "'expedite and encourage foreign commerce,'" (*id.* at 27 (quoting S.Rep. No. 1107, 81st Cong., 2d Sess. (1949), *reprinted in* 1950 U.S.Code Cong.Serv. 2533, 2533–34)), the FTZA "was intended to expedite and encourage foreign commerce as a means toward increasing domestic employment," (*id.* (citing S.Rep. No. 905, 73d Cong., 2d Sess. 2, 3 (1934)).[14] Thus, defendant concludes, the

Board's public interest consideration, "with consideration of local economic effects, including the economic development factors reviewed in this case—is fully consistent with the purposes of the [FTZA]." (*Id.*)

## C. *Defendant–Intervenors*

In support of the Board's grant, defendant-intervenors first contend the Board's proceedings complied with any due process requirements. According to defendant-intervenors, the Board's decision did not deprive plaintiff of any property interest because the Board did not revoke or restrict the grant of authority for FTZ No. 32, but instead merely authorized a competing licensee to do business. Defendant–Intervenors argue plaintiff has not offered any evidence that the value of its interest in the grant of authority for FTZ No. 32 has diminished, or that it has suffered any other tangible harm from the Board's approval of the Wynwood application. Plaintiff's argument that a zone grant includes a right to be free from competition, defendant-intervenors maintain, is contrary to the FTZA, which explicitly provides for the establishment of more than one zone in a single port of entry. (Def.–Intervenors' Opp'n at 14 (citing 19 U.S.C. § 81b(b).) Furthermore, defendant-intervenors argue, even if plaintiff could establish deprivation of a constitutionally protected property interest, "there is simply no basis in constitutional law for its claim that the Board was required to convene a formal evidentiary hearing." (*Id.* at 16 (footnote omitted).) Defendant–Intervenors assert that any due process requirements were "more than satisfied" when all interested parties, including plaintiff, were given the chance to submit their views to the Board

---

**11.** 19 U.S.C. § 81b(b).

**12.** Defendant further explains that over one year prior to its examination of the Wynwood application, the Board had issued a proposed regulation that would codify its position. (Fed.Defs.' Opp'n at 22 (citing *Foreign–Trade Zones in the United States*, 55 Fed.Reg. at 2760 (Jan. 26, 1990)).)

**13.** Defendant maintains the Board also made several findings directly addressing plaintiff's submitted evidence attempting to show that approval of Wynwood's application would cause competitive harm to FTZ No. 32. According to defendant, these findings included: (1) the focus

of the Wynwood FTZ would differ from that of FTZ No. 32; (2) the difference in focus would minimize any competitive impact on FTZ No. 32; (3) any incidental competitive effects would be outweighed by overriding public interest.

**14.** The FTZA, defendant further asserts, "authorizes the Board to 'respond to and resolve the changing needs of domestic and foreign commerce through the trade zone concept.'" (Defs.' Opp'n at 27 (emphasis added in brief omitted) (quoting *Armco Steel Corp. v. Stans*, 431 F.2d 779, 788 (2nd Cir.1970)).)

and to respond to opposing views. (*Id.* at 17.) Additionally, defendant-intervenors argue, plaintiff's intimations concerning an inability to respond to alleged *ex parte* communications from Wynwood to the Board is flatly contradicted by the record because plaintiff's own letters submitted after the close of the comment period expressly referred and responded to the alleged *ex parte* communications by Wynwood.

Second, defendant-intervenors contend the Board correctly applied the "convenience of commerce" standard demanded by the FTZA. According to defendant-intervenors, the Board's interpretation of the statutory standard is a reasonable exercise of the discretion afforded to the Board as the agency charged with administering the FTZA. Additionally, defendant-intervenors argue, the Board's interpretation is consistent with both the text and purpose of the FTZA. "If Congress had intended the Board to consider only the needs of foreign trade in authorizing additional zones," defendant-intervenors assert, "it would have used those words." (*Id.* at 26.) Defendant–Intervenors argue the Board's interpretation of the FTZA's standard for the grant of an additional zone "to include consideration of the potential economic benefits of a zone proposal to the surrounding community," (*id.* at 25), "coincides with the overriding purpose of the [FTZA]: increasing foreign commerce in U.S. ports of entry to stimulate local economic development," (*id.* at 26). Furthermore, defendant-intervenors argue, even if plaintiff were correct in arguing that the needs of foreign commerce are the only reasonable considerations under the statutory standard, the Board's decision would still be proper because the Board expressly determined, based on record evidence, that the Wynwood FTZ was necessary to meet the needs of foreign trade.

Finally, defendant-intervenors contend that contrary to plaintiff's assertion, plaintiff was not entitled to a right of first refusal to operate the Wynwood FTZ. According to defendant-intervenors, plaintiff's dispute is actually with the City of Miami, which chose to pursue the Wynwood proposal over plaintiff's proposal to create a subzone or non-contiguous subzone in the Wynwood area. The Board was powerless to consider a subzone as an alternative to Wynwood's application, defendant-intervenors argue, because no application was before it.

## STANDARD OF REVIEW

■ This Court set forth the standard of review applicable to decisions of the Board in *Conoco, Inc. v. United States,* 18 CIT ——, ——, 855 F.Supp. 1306, 1310–11 (1994) (*Conoco III*). *See also Conoco, Inc. v. United States,* 19 CIT ——, ——, 885 F.Supp. 257, 262 (1995) (*Conoco IV*) (reiterating the standard of review set forth in *Conoco III*), *appeal docketed,* No. 95–1390 (Fed.Cir. June 9, 1995); *Phibro Energy, Inc. v. Brown,* 19 CIT ——, ——, 886 F.Supp. 863, 868 (1995) (same). Based on the standards prescribed by 5 U.S.C. § 706, this "Court must first 'decide whether the [Board] acted within the scope of [its] authority' in order to determine whether the Board's action violated § 706(2)(C)." *Conoco III,* 18 CIT at ——, 855 F.Supp. at 1311 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (further citation omitted)) (bracketed text inserted in *Conoco III*). If this Court determines the Board did act within the scope of its authority, "the Court may then consider whether the Board's action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' in violation of § 706(2)(A)." *Id.* at ——, 855 F.Supp. at 1311 (quoting 5 U.S.C. § 706(2)(A) (1988) and citing *Citizens to Preserve Overton Park,* 401 U.S. at 416, 91 S.Ct. at 823).

## DISCUSSION

### A. *The Absence of a Hearing*

■ The Court finds no merit in plaintiff's argument that it is entitled to a hearing due to a constitutionally protected property interest in FTZ No. 32. Even if plaintiff does possess a constitutionally protected property interest in FTZ No. 32,[15] simply

---

**15.** The Court expressly does not hold that plaintiff possesses a constitutionally protected proper-

because plaintiff requested a hearing does not mean that anything short of a hearing deprived plaintiff of due process. The Board afforded plaintiff sufficient notice and opportunity to be heard. On October 26, 1990, the Board published notice of the submission of the application. *See Notice of Application,* 55 Fed.Reg. at 43,152. That notice invited written comments from interested parties. *See id.* ("Comments concerning the proposed zone are invited in writing from interested parties."). Plaintiffs had several weeks in which to submit comments. *See id.* (setting the deadline for comments as December 14, 1990). On the last day of the comment period, plaintiff filed a written objection to Wynwood's application, thereby availing itself of that opportunity to be heard. At the same time, plaintiff also requested a hearing. Although the Board is authorized to hold hearings, the regulations do not require the Board to hold a hearing upon request. *See* 15 C.F.R. §§ 400.1305, 400.1309, 400.1315 (1990). If plaintiff wished to submit a greater amount of evidence, it could have done so in its objection filed December 14, 1990.

 Plaintiff's claim that the Board's procedures in this case were materially deficient and thus call for a remand for an evidentiary hearing does not alter the Court's analysis. In its papers before this Court, plaintiff alleges Wynwood provided comments to the Board after the close of the comment period. Plaintiff, however, also submitted post-comment period comments. (*See* P.R. 67 at 1 (Letter from German Leiva, President, Miami Free Zone Corp., to John J. DaPonte, Jr., Executive Secy., FTZB (Feb. 8, 1991) (requesting "that this comment be accepted late and considered as a part of the record during your deliberations on the . . . application")); P.R. 103 at 1 (Letter from German Leiva, President, Miami Free Zone Corp., to John J. DaPonte, Jr., Executive Secy., FTZB (Aug. 8, 1991) ("This letter will supplement our previous correspondence objecting to the foreign-trade zone application filed by [Wynwood].")).) If plaintiff was submitting post-comment period comments, it should have

been aware that Wynwood was able to make similar submissions,[16] and should not now complain that Wynwood availed itself of the same opportunity. Furthermore, Wynwood's post-comment submissions to which plaintiff cites were made part of the administrative record. (*See* Pl.'s Br. at 9 (citing P.R. 66, 83, 97, 99).) Although plaintiff complains it "did not receive copies of these communications," presumably these communications were available to plaintiff upon request. In light of the above analysis, plaintiff's request for a remand for the purpose of holding an evidentiary hearing is denied.

**B.** *The Approval of the Wynwood Application*

Section 81b(b) of the FTZA provides:

Each port of entry shall be entitled to at least one zone, but when a port of entry is located within the confines of more than one State such port of entry shall be entitled to a zone in each of such States, and when two cities separated by water are embraced in one port of entry, a zone may be authorized in each of said cities or in territory adjacent thereto. *Zones in addition to those to which a port of entry is entitled shall be authorized only if the Board finds that existing or authorized zones will not adequately serve the convenience of commerce.*

19 U.S.C. § 81b(b) (emphasis added). Thus, in considering an application for the grant of an additional zone, the Board must consider whether "existing or authorized zones will not adequately serve the convenience of commerce."

The Board contends it followed the statutory mandate. In its briefs to this Court, defendant explains the Board has interpreted § 81b as "requiring a review that considers whether the additional zone will serve the 'public interest.'" Defendant further argues "the Board's analysis of the 'public interest'—with consideration of local economic effects, including the economic development

---

ty interest in FTZ No. 32.

**16.** The Court notes that P.R. 67 reflects additional awareness of the submission of post-comment

period comments. (*See* P.R. 67 at 1 ("We recently learned of a late addition to the Board's file on this application.").)

factors reviewed in this case—is fully consistent with the purposes of the [FTZA]."

■ The Court observes that "Congress has delegated a wide latitude of judgment to the Foreign–Trade Zones Board to respond to and resolve the changing needs of domestic and foreign commerce through the trade zone concept." *Armco Steel,* 431 F.2d at 788. This wide latitude of judgment, however does not extend to the alteration of statutory language. While "public interest" considerations may play a role in a "convenience of commerce" analysis, the terms are not necessarily synonymous. "Public interest" is a broader term, and hence public interest considerations may include factors largely unrelated to the "convenience of commerce." *See Conoco IV,* 19 CIT at ——, 885 F.Supp. at 272 (" '[P]ublic interest' is a broad and everchanging phrase."). For example, if the Board's decision rested solely on state and local officials' legitimate desire to revive in the public interest an economically depressed area without considering if "existing or authorized zones will not adequately serve the convenience of commerce" as § 81b(b) requires, the Court would hold the decision of the Board did not meet the requirements of the statute.

■ In the instant case, the Court cannot ascertain, however, what factors served as the basis for the Board's approval of the Wynwood application, and accordingly, the Court cannot discern whether the Board performed the appropriate statutory analysis. Defendant's briefs to this Court do appear to marshal sufficient and appropriate evidence supporting the Board's approval of the Wynwood application. (*See* Fed.Defs.' Opp'n at 24–26.)[17] Defendant indicates this evidence is found in the Examiners Committee report.[18] No such evidence is discussed or

pointed out, however, in the *Wynwood Grant.*

According to defendant's explanation to this Court, the "Examiners Committee report summarizes the application and record, the proposal and its economic impact, policy considerations, and concludes with *a nonbinding recommendation* for the FTZ Board." (*Id.* at 5 (emphasis added).) The Examiners Committee report, defendant further explains, is attached to a "decision 'package'" submitted to the Board's chairperson. Because the Examiners Committee report contains only a summary and *nonbinding* recommendation that was submitted as part of a decision package to the ultimate decision maker, this Court cannot conclude that certain factors listed in the Examiners Committee report served as the basis for the decision maker's decision.

The decision memorandum [19] also does not aid defendant's case. First, according to defendant, the decision memorandum is another part of the "decision 'package'" prepared for the Board's chairperson. This statement indicates to the Court that the decision memorandum is not the appropriate document to look to in order to ascertain which facts on the record served as the basis for the grant.

Second, although the decision memorandum does frame the "main issue in this case [as] whether the additional zone is needed to serve the convenience of commerce," [20] the decision memorandum does not point out or discuss factors appropriate for a consideration of the "convenience of commerce." In defendant's brief to this Court, defendant does offer a discussion of factors going to the "convenience of commerce" which defendant attributes to the Examiners Committee report. For example, defendant explains the

---

**17.** For example, defendant explains "[t]he local business community expressed the view that there was a need for additional zone services," (Fed.Defs.' Opp'n at 24 (emphasis omitted)):

These companies require a location near the port because their products will be shipped from Miami by ocean freight.... The Wynwood project is located in the Port of Miami area, whereas FTZ 32 has sites near Miami International Airport. While the majority of FTZ 32's incoming shipments arrive at the port, most leave from the airport. Wynwood is

seeking to attract users whose inbound and outbound shipments require ocean freight.
(P.R. 105 at 9, *quoted in* Fed.Defs.' Opp'n at 24.)

**18.** (P.R. 105.)

**19.** (Decision Mem. (date stamped Nov. 13, 1991), *reprinted in* App. to Pl.'s Mot. for Summ.J. Tab 8.).)

**20.** (Decision Mem. at 1.)

**630**

Examiners Committee report made the following finding: "A survey of over 190 companies indicated that 'existing foreign-trade zone facilities in the Miami area are not fully serving the needs of the ocean freight-related activity near the Port of Miami.'" (Fed. Defs.' Opp'n at 24 (quoting P.R. 105 at 7).) Although this evidence would appear to relate to a consideration of the "convenience of commerce," neither this survey and nor other such evidence relevant to the "convenience of commerce" are mentioned in the decision memorandum. The decision memorandum does state that "[t]he record contains evidence of a general economic basis for expanding the area's zone facilities and services." (Decision Mem. at 1.) The memorandum, however, is substantially devoted to summarizing the "public interest" benefit of granting the Wynwood:

> [The record] indicates that economic development in the Wynwood community is a high priority for both state and local officials. Wynwood is located in one of three Florida State Enterprise Zones which offer substantial state and local tax incentives to attract new business and employment activities to the state's most economically depressed areas. This designation is an indication of the priority state and local officials have given to economic development in Wynwood. *It is a basis for the examiners committee's findings that there is a special need for zone services in the Wynwood community, and that the existing zone will not adequately serve the "convenience of commerce" for this purpose.*
> ... The main consideration in cases involving proposals for additional zones is whether the public interest would be better served by the establishment of the additional zone project, notwithstanding the competitive effect on the existing zone.

(*Id.* at 1–2.) The Court further notes that contrary to defendant's claim that the Board "subsequently adopted" the Examiners Committee report, it does not appear the decision memorandum adopts or adopts by reference relevant factors listed in the Examiners Committee report. Thus, even if the Court were to find the decision memorandum an appropriate document for the Court to examine to ascertain the Board's basis for the grant, the Court cannot discern which factors served as the basis for the grant—the factors going to public interest, or factors relevant to the convenience of commerce.

As discussed in *Conoco III,* where an

> "administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive."

*Conoco III,* 18 CIT at ——, 855 F.Supp. at 1311 (quoting *SEC v. Chenery Corp.,* 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577–78, 91 L.Ed. 1995 (1947)). The Court finds the Board's decision to approve the Wynwood application does not contain an understandable basis that would permit this Court to determine whether the Board acted within the scope of its authority. The notice the Board published to announce its decision simply does not indicate on what basis the Board approved the application. *See Wynwood Grant,* 56 Fed.Reg. at 61,227. The Court, therefore, remands this action to the Board so that it may explain fully it basis for approving the Wynwood application and point out what evidence on the record it relied upon in reaching that determination.

CONCLUSION

The Court holds plaintiff was not deprived of due process. Plaintiff's request for a remand for the purpose of holding an evidentiary hearing is denied. Because the Court cannot discern whether the Board followed its statutory mandate in granting the zone application, however, *Application of Wynwood Community Economic Dev. Corp.,* 56 Fed.Reg. 61,227 (Dep't Comm.1991) (resolution and order), is remanded so that the Board may explain fully its basis for approving the Wynwood application and point out what evidence on the record it relied upon in reaching that determination.

## *ORDER*

This case having been duly submitted for decision, and the Court after due deliberation, having rendered a decision herein; now in conformity with said decision it is hereby

**ORDERED** that plaintiff's request for a remand of *Application of Wynwood Community Economic Dev. Corp.*, 56 Fed.Reg. 61,227 (Dep't Comm.1991) (resolution and order), for the purpose of holding an evidentiary hearing is denied; and it is further

**ORDERED** that the Foreign–Trade Zones Board's (Board) approval of the Wynwood application in *Application of Wynwood Community Economic Dev. Corp.*, 56 Fed.Reg. 61,227 (Dep't Comm.1991) (resolution and order), is remanded to the Board for fulfillment of the following instructions: On remand, the Board shall explain fully its basis for approving the Wynwood application and point out what evidence on the record it relied upon in reaching that determination; and it is further

**ORDERED** that the Board will file its remand with this Court no later than February 9, 1996; and it is further

**ORDERED** that plaintiff may submit comments on the remand of no more than 10 pages, and file those comments with this Court no later than February 16, 1996. Defendant may file a response of no more than five pages to plaintiff's comments no later than February 23, 1996. Defendant–Intervenors may file a collective response of no more than five pages to plaintiff's comments no later than February 23, 1996.